**Abdulkhaleq MUGALLI, Petitioner,**

v.

**John ASHCROFT, Attorney General of The United States, Respondent.**

**No. 00–4063.**

United States Court of Appeals, Second Circuit.

Argued: Jan. 24, 2001.

Decided: July 10, 2001.

Robert D. Kolken, Sacks & Kolken, Buffalo, N.Y. (Eric W. Schultz, on the brief), for Petitioner.

Edward Chang, Assistant United States Attorney, New York, N.Y. (Mary Jo White, United States Attorney, Gideon Schor, on the brief), for Respondent.

Before: PARKER, SACK, and KATZMANN, Circuit Judges.

SACK, Circuit Judge.

In this appeal, we must determine whether a conviction for the New York equivalent of "statutory rape" under New York Penal Law § 130.25–2 constitutes an "aggravated felony" within the meaning of 8 U.S.C. §§ 1227(a)(2)(A)(iii) and 1101(a)(43). Deferring as we must to the Board of Immigration Appeals' reasonable interpretation of the immigration laws, we conclude that it does. We also must determine whether a Certificate of Relief from Disabilities issued pursuant to § 701 of the New York Corrections Law by the New York court in which Mugalli was convicted immunizes the petitioner from any immigration consequences of his conviction. We conclude that it does not.

## BACKGROUND

Petitioner Abdulkhaleq Mugalli is a native and citizen of Yemen who lawfully immigrated to the United States in March 1991. On April 22, 1999, Mugalli was indicted by a grand jury in Oneida County, New York, on two counts: (1) rape in the third degree for engaging in sexual intercourse with a female under the age of

seventeen in violation of New York Penal Law § 130.25–2,[1] and (2) endangering the welfare of a child in violation of New York Penal Law § 260.10–1. Mugalli pled guilty to the first count[2] "in full satisfaction" of the indictment. At the time of the offense, the victim was sixteen years and seven months old; Mugalli was twenty-nine. Mugalli was sentenced on July 12, 1999, to five years' probation. At sentencing, he received from the court a Certificate of Relief from Disabilities ("Certificate of Relief") pursuant to New York Corrections Law § 701. The Certificate of Relief purported to relieve Mugalli "of all forfeitures, and of all disabilities and bars to employment, excluding the right to retain or to be eligible for public office."

Less than a month later, on August 6, 1999, the Immigration and Naturalization Service ("INS") served Mugalli with a "Notice to Appear" in removal proceedings brought under § 240 of the Immigration and Naturalization Act ("INA"). The notice asserted that Mugalli was deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(A).

Mugalli appeared before an Immigration Judge ("IJ") arguing that his New York conviction for rape in the third degree did not constitute an aggravated felony as defined by 8 U.S.C. § 1101(a)(43)(A) and that his Certificate of Relief immunized him from any immigration consequences of the conviction. The IJ rejected Mugalli's arguments and ordered his removal.

Mugalli appealed the IJ's decision to the Board of Immigration Appeals ("BIA").

The BIA concluded that "statutory rape" constituted "sexual abuse of a minor," which is designated by § 1101(a)(43)(A) as an aggravated felony. *See In re Mugalli,* No. A41 982 646 (BIA Feb. 25, 2000). The BIA further held that the Certificate of Relief had no bearing on his deportation. The BIA therefore dismissed Mugalli's appeal and ordered that he be removed to Yemen.

Mugalli petitions for review of that decision. Because his New York conviction does qualify as an aggravated felony and has not been expunged by his Certificate of Relief, we lack jurisdiction over Mugalli's petition for review and therefore dismiss it.

## DISCUSSION

### I. Jurisdiction

The INA provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). For purposes of this section, an "aggravated felony" includes "murder, rape, or sexual abuse of a minor." 8 U.S.C. § 1101(a)(43)(A).

Under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, Div. C., Title III–B, 110 Stat. 3009–546 (Sept. 30, 1996) ("IIRI-RA"), we cannot review any final removal order against an alien who is deportable because he was convicted of an aggravated felony. *See* 8 U.S.C. § 1252(a)(2)(C). This jurisdictional bar arises if: (1) the petitioner is an alien; and (2) he is deport-

---

1. Although § 130.25–2 does not use the term, the statute criminalizes what is commonly known as "statutory rape." *See Black's Law Dictionary* 1267 (7th ed. 1999) (defining "statutory rape" as "[u]nlawful sexual intercourse with a person under the age of consent (as defined by statute), regardless of whether it is against that person's will.").

2. His guilty plea is equivalent to a conviction. *See, e.g., Sui v. INS,* 250 F.3d 105 (2d Cir. 2001) (treating guilty plea as a "conviction" for purposes of 8 U.S.C. 1227(a)(2)(A)(iii), without discussion).

able under one of the offenses enumerated in 8 U.S.C. § 1101(a)(43). *See Bell v. Reno*, 218 F.3d 86, 89 (2d Cir.2000), *cert. denied*, 531 U.S. 1081, 121 S.Ct. 784, 148 L.Ed.2d 680 (2001). However, "[w]e have jurisdiction to determine whether this jurisdictional bar applies, and we may thus review whether [Mugalli] satisfies these jurisdictional facts." *Id.*

Mugalli concedes that he is an alien. "The jurisdictional inquiry thus merges with the question on the merits: If [Mugalli] is in fact removable because he was convicted of an aggravated felony . . . , we must dismiss his petition for lack of jurisdiction." *Sui v. INS*, 250 F.3d 105, 110 (2d Cir.2001). We are therefore required to consider Mugalli's substantive arguments that his New York conviction is not an aggravated felony under the INA and that his conviction has been expunged for purposes of the immigration laws by the Certificate of Relief.

## II. Standard of Review

The "determination of our jurisdiction is exclusively for the court to decide." *Lopez–Elias v. Reno*, 209 F.3d 788, 791 (5th Cir.2000), *cert. denied*, 531 U.S. 1069, 121 S.Ct. 757, 148 L.Ed.2d 660 (2001). In this appeal, our jurisdiction depends on the definition of the phrase "aggravated felony" as used in the INA, a statute that is administered by, among others, the BIA. "As is well-established, *Chevron* [*U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984),] requires reviewing courts to defer to an agency's interpretation of the statute it administers when the intent of Congress is unclear and the agency's interpretation is reasonable." *Sui*, 250 F.3d at 112 (citing *Bell*, 218 F.3d at 90).

Under *Chevron*, when we examine an agency's interpretation of a statute

it administers, we first ask whether "the intent of Congress is clear as to the precise question at issue." *Bell*, 218 F.3d at 90 (internal quotation marks and citations omitted).

> If, by employing traditional tools of statutory construction, we determine that Congress's intent is clear, that is the end of the matter. However, if the statute is silent or ambiguous with respect to the specific issue, we then ask whether the agency's answer is based on a permissible construction of the statute. We must affirm the agency's construction . . . as long as that interpretation is reasonable.

*Id.* (internal quotation marks and citations omitted). In making this assessment,

> it is not necessary that we conclude that the agency's interpretation of the statute is the only permissible interpretation, nor that we believe it to be the best interpretation of the statute. Rather, in order to affirm the BIA's determination, we need only conclude that its interpretation is reasonable and that it considered the matter in a detailed and reasoned fashion.

*Michel v. INS*, 206 F.3d 253, 263 (2d Cir. 2000) (internal quotation marks and citations omitted).

The Supreme Court has held "that the BIA should be accorded *Chevron* deference as it gives ambiguous statutory terms concrete meaning through a process of case-by-case adjudication." *INS v. Aguirre–Aguirre*, 526 U.S. 415, 425, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999) (internal quotation marks and citation omitted). We have observed, however, that "where the BIA is interpreting state or federal criminal laws, we must review its decision *de novo*," *Michel*, 206 F.3d at 262, because "the BIA is not charged with administration of these laws," *Sui*, 250 F.3d at 112

(citing *Michel,* 206 F.3d at 262 and *Sutherland v. Reno,* 228 F.3d 171, 174–75 (2d Cir.2000)).

Our recent decision in *Sui* is instructive. There, the petitioner had been convicted of possessing $22,700 in counterfeit traveler's checks with intent to deceive another in violation of 18 U.S.C. § 513(a). The question presented to us was whether that conviction constituted an "attempt," under 8 U.S.C. § 1101(a)(43)(U), to commit an offense "invol[ving] fraud or deceit in which the loss to the ... victims exceeds $10,000" under 8 U.S.C. § 1101(a)(43)(M)(i), and therefore an "aggravated felony" under 8 U.S.C. § 1227(a)(2)(A)(iii). We held that the BIA was entitled to deference with respect to its interpretation of §§ 1101(a)(43)(M)(i), 1101(a)(43)(U) and 1227(a)(2)(A)(iii), which provide for deportation of aliens for committing specified "aggravated felonies," because those statutory sections are part of the immigration laws that the INS administers. Thus, we deferred to the BIA's construction of § 1101(a)(43)(U) under which an "attempt" to commit a crime requires both the requisite intent to commit the crime and a substantial step toward completing it. But the BIA's conclusion that a conviction under 18 U.S.C. § 513(a) necessarily constituted an "attempt" as the BIA had defined it depended on an analysis of a federal criminal statute and was thus beyond the BIA's administrative responsibility and expertise. That conclusion was therefore entitled to no deference from us. *See Sui,* 250 F.3d at 117.

■ Similarly in the· case at hand, we defer to the BIA's interpretation of § 1101(a)(43)(A) in determining the meaning of "sexual abuse of a minor." We give no deference, however, to the BIA's decision that Mugalli's conviction under New York law for "statutory rape" meets the BIA's interpretation of "sexual abuse of a minor."

### III. Merits

#### A. Whether Mugalli was Convicted of an Aggravated Felony

1. *The Meaning of "Sexual Abuse of a Minor."* The INA defines aggravated felony to include "murder, rape, or sexual abuse of a minor." 8 U.S.C. § 1101(a)(43)(A).[3] The only guidance provided by the statute regarding the meaning of the phrase "sexual abuse of a minor" is that it "applies to an offense ... whether in violation of Federal or State law." 8 U.S.C. § 1101(a)(43). The term is not defined by explicit reference to other provisions of the United States Code, as are terms in several other parts of § 1101(a)(43). *Cf., e.g.,* 8 U.S.C. § 1101(a)(43)(B) (referring to section 802 of Title 21 and section 924(c) of Title 18); § 1101(a)(43)(C) (referring to sections 921 and 841(c) of Title 18); § 1101(a)(43)(D) (referring to sections 1956 and 1957 of Title 18); § 1101(a)(43)(E) (referring to several sections of Title 18), § 1101(a)(43)(H) (referring to several sections of Title 18). Thus, the language of the statute yields no clear evidence of congressional intent as to the scope of the phrase.

In interpreting the phrase "sexual abuse of a minor," the BIA reasoned that because § 1101(a)(43)(A) does not refer to other specific statutory provisions, the agency was not required to adopt a definition of the term from a specific federal or state statute. *See In re Mugalli,* slip op. at 2. But in accordance with its decision in *Matter of Rodriguez–Rodriguez,* Interim

---

**3.** Congress added "sexual abuse of a minor" when it enacted the IIRIRA. *See* H.R. Conf. Rep. No. 104–828 (1996); 142 Cong. Rec. S11,838–01 (1996).

Dec. (BIA) 3411, 1999 BIA LEXIS 51, 1999 WL 731793 (BIA 1999), the BIA decided that to determine the meaning of the phrase, it could refer to other federal statutes for guidance. *See In re Mugalli,* slip op. at 2.

Mugalli urged the BIA to look to the definition of "sexual abuse of a minor" in 18 U.S.C. § 2243(a), which makes it a crime, denominated "sexual abuse of a minor or ward," for a person

> in the special maritime and territorial jurisdiction of the United States or in a Federal prison, knowingly [to] engage[] in a sexual act with another person who—(1) has attained the age of 12 years but has not attained the age of 16 years; and (2) is at least four years younger than the person so engaging.

Under that definition, Mugalli would not have been guilty of felonious "sexual abuse of a minor" because the victim of his crime had in fact attained the age of sixteen.

The BIA, employing the interpretive approach taken by *Rodriguez–Rodriguez, supra,* rejected that contention. In *Rodriguez–Rodriguez,* the BIA had been called upon to decide whether conviction of an alien for violation of a Texas statute making it a felony for an adult to sexually expose himself to a child was, for purposes of 1101(a)(43)(A), the aggravated felony of "sexual abuse of a minor." Petitioner Rodriguez–Rodriguez asked the BIA to find the definition of the phrase in elements of the federal crimes set forth in § 18 U.S.C. § 2242 ("sexual abuse"), and in the statute urged upon us in this case, 18 U.S.C. § 2243 ("sexual abuse of a minor or ward"). *See Rodriguez–Rodriguez,* 1999 BIA LEXIS 51, at *10–*11.[4] An element of the crimes established by §§ 2242 and 2243 is a "sexual act." *See* 18 U.S.C. §§ 2242, 2243. Section 2246 de-

fines "sexual act" to include "touching" or "contact." *See* 18 U.S.C. § 2246(2). Neither touching nor contact were elements of the Texas crime for which Rodriguez–Rodriguez had been convicted.

The BIA declined to base its definition on those statutes. It looked instead to 18 U.S.C. § 3509(a)(8) as "a useful identification of the forms of sexual abuse." *Rodriguez–Rodriguez,* 1999 BIA LEXIS 51, at *11. Section 3509(a)(8) provides:

> [T]he term "sexual abuse" includes the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in, or assist another person to engage in, sexually explicit conduct or the rape, molestation, prostitution, or other form of sexual exploitation of children, or incest with children.

18 U.S.C. § 3509(a)(8). The BIA also referred to *Black's Law Dictionary* for a "common[] defin[ition]" of "sexual abuse": "illegal sex acts performed against a minor by a parent, guardian, relative, or acquaintance." *Rodriguez–Rodriguez,* 1999 BIA LEXIS 51, at *11–*12 (quoting *Black's Law Dictionary,* 1375 (6th ed. 1990)). The BIA decided that §§ 2242, 2243 and 2246 were "too restrictive to encompass the numerous state crimes that can be viewed as sexual abuse and the diverse types of conduct that would fit within the term as it commonly is used." *Id.* at *13. It also found the §§ 2242, 2243 and 2246 definitions to be "[in]consistent with Congress' intent to remove aliens who are sexually abusive toward children and to bar them from any relief." *Id.* Adopting the broad general definition extracted from 18 U.S.C. § 3509(a)(8) and *Black's,* the BIA concluded that sexual exposure by an adult to a child, the crime for which Rodriguez–Rodriguez had been convicted, constituted the aggravated felony of "sexual abuse of a

---

**4.** The WestLaw version of the opinion, 1999 WL 731793, does not contain star pagination.

minor" even though neither "contact" nor "touching" is an element of the crime.[5]

The BIA took a similar approach in Mugalli's case. The BIA was seeking a definition of "sexual abuse of a minor" that captured a "broad ... spectrum of sexually abusive behavior," *Mugalli*, slip op. at 2 (internal quotation mark and citation omitted) because, in the judgment of the BIA expressed in *Rodriguez–Rodriguez*, "Congress intended to provide in [IIRIRA] a comprehensive scheme to cover crimes against children." *Rodriguez–Rodriguez*, 1999 BIA LEXIS 51, at *13. The BIA therefore declined to adopt the § 2243 definition limiting "sexual abuse of a minor" to abuse of a person twelve through fifteen years of age as "too restrictive to encompass the numerous state crimes that can be viewed as sexual abuse and the diverse types of conduct that would fit within the term as it is commonly used." *Mugalli*, slip op. at 3 (quoting *Rodriguez–Rodriguez*, 1999 BIA LEXIS 51, at *13).

Instead, the BIA adopted the definition of "sexual abuse" of a child contained in 18 U.S.C. § 3509(a), the same statute to which the *Rodriguez–Rodriguez* Board had referred. *See id.*, slip op. at 2. As noted, § 3509(a) provides, *inter alia*, that " '[s]exual abuse' [of a child] includes the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in ... sexually explicit conduct." 18 U.S.C. § 3509(a)(8). "Sexually explicit conduct" is, in turn, defined to include "sexual intercourse." 18 U.S.C. § 3509(a)(9)(A); *see In re Mugalli*, slip op. at 2–3. And a "child" is a person under the age of eighteen. *See id.* at 2 (citing 18 U.S.C. § 3509(a)(2)). Thus, according to the BIA, a state-law felony is equivalent to "sexual abuse of a minor" if the elements of the crime include the employment, use, persuasion, inducement, enticement, or coercion of a person under eighteen to engage in sexual intercourse.

It would be troubling if the BIA had done no more than pluck the definition of "sexual abuse of a minor" from § 3509(a). That statute sets forth procedures for protecting child victims and child witnesses in the course of federal litigation. It is directed neither to substantive criminal law nor to immigration law. It addresses neither the elements of criminal conduct nor the characteristics of aggravated felonies. But the *Rodriguez–Rodriguez* Board observed, "We are not adopting this statute as a definitive standard or definition but invoke it as a guide in identifying the types of crimes we would consider to be sexual abuse of a minor." *Rodriguez–Rodriguez*, 1999 BIA LEXIS 51, at *13. We agree that the § 3509(a) definition is appropriate not simply because it appears somewhere in the United States Code, but because it is consonant with the generally understood broad meaning of the term "sexual abuse" as reflected in *Black's:* "An illegal sex act, esp. one performed against a minor."[6] *See*

---

5. We intimate no view as to whether the *Rodriguez–Rodriguez* Board's holding that the conviction of the petitioner there for sexually exposing himself to a child constituted conviction for "sexual abuse of a minor" was correct. Exposure to a child is plainly different from sexual intercourse with a child, of which Mugalli was convicted, a difference that may or may not have legal significance.

6. Central to the concept of "statutory rape" is the notion that a person less than a certain age is legally incapable of giving consent and thus that statutory rape involves a sexual act committed by one partner "against" the other. *See United States v. Griffith*, 2000 WL 1253265, at *18 (S.D.N.Y.2000) (noting that "as statutory rape laws prove, most legislatures agree that minors are incapable of 'consenting' to sexual intercourse"); *People v. Fauntleroy*, 94 Misc.2d 606, 611, 405 N.Y.S.2d 931, 934 (1978) (finding that "[w]hat the law has recognized is a lack of *legal* capacity on the part of the victim to consent to such a sexual act") (emphasis in

*Black's Law Dictionary*, 10 (7th ed. 1999).[7] It is also supported by the BIA's reading of Congressional intent to "provide ... a comprehensive scheme to cover crimes against children." *Rodriguez–Rodriguez*, 1999 BIA LEXIS 51, at *13.

Mugalli, relying on *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), argues that the BIA was required to adopt a single federal definition of "sexual abuse of a minor" so that aliens throughout the United States are subject to a uniform standard of behavior. We have indeed observed that we are to avoid decisions that result in "disparate treatment of similarly situated aliens under the immigration laws." *Aguirre v. INS*, 79 F.3d 315, 317 (2d Cir.1996). We summarized the principle in *Sui:*

> [T]he Supreme Court addressed an analogous issue in *Taylor* ... when it considered whether the term "burglary," as used in a federal sentence enhancement statute, meant "burglary" however a jurisdiction chose to define it, or was instead premised upon a uniform definition of the crime, which might not include some offenses formally labeled "burglary." *See id.* at 579–80., 110 S.Ct. 2143 The Court concluded that it was "implausible that Congress intended the meaning of 'burglary' ... to depend on the definition adopted by the State of conviction," since such a conclusion would mean that exactly the same conduct could have different results for sentencing if state labeling schemes varied. *Id.* at 590, 110 S.Ct. 2143. Indeed, the general rule is that unless Congress gives plain indication to the contrary, federal laws are not to be construed so that their meaning hinges on state law, "because the application of federal legislation is nationwide and at times the federal program would be impaired if state law were to control." *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 119–20, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983).

*Sui*, 250 F.3d at 114 (second ellipsis in the original).

The BIA's decision in *Mugalli* is consistent with both *Taylor* and *Sui*. The definition that the BIA has adopted applies nationwide. What varies from state to state is statutory rape laws. We are confident that Congress intended that behavior criminalized in one state and not another can constitute an aggravated felony if committed in the first state and not the second, even though the result would be that identical behavior may result in an alien being subject to removal from the United States in the first instance and not in the second. The disparate results necessarily follow from the dependence of removal on a *conviction* for an aggravated felony rather than on performance of specified misconduct. Congress was plainly aware that the substance of criminal law would vary from jurisdiction to jurisdiction. It acknowledged as much by providing that the

---

original), *rev'd on other grounds*, 74 A.D.2d 612, 424 N.Y.S.2d 736 (2d Dep't 1980); *see also* Note, *Forcible and Statutory Rape: An Exploration of the Operation and Objectives of the Consent Standard*, 62 Yale L.J. 55, 74–76 (1952). The sexual act is thus nonconsensual as a matter of law, and therefore perpetrated by the older person against the younger one.

**7.** As noted in the discussion of *Rodriguez–Rodriguez* above, the *Black's* definition of "sexual abuse," on which the *Rodriguez–Rod* riguez Board relied, was taken from the 1990 edition of the dictionary: "[I]llegal sex acts performed against a minor by a parent, guardian, relative, or acquaintance." *See Rodriguez–Rodriguez*, 1999 BIA LEXIS 51, at *12 (quoting *Black's Law Dictionary*, 1375 (6th ed. 1990)). We see no significance for present purposes in the difference between that definition and that set forth in the 1999 edition.

term "aggravated felony" "applies to an offense ... *whether in violation of Federal or State law.*" 8 U.S.C. § 1101(a)(43) (emphasis added). Congress therefore surely understood that whether conduct would result in removal would depend on the laws of the state in which it occurred and would therefore differ from state to state.

We also note that as a practical matter it would be difficult or impossible for the BIA to adopt the uniform national standard urged by Mugalli. First, under that principle, if even one American jurisdiction failed to adopt the crime of statutory rape or its equivalent, a conviction for sexual intercourse with a child could not be an aggravated felony wherever committed.[8] Second, even if statutory rape or its equivalent were a crime in every United States jurisdiction, to ensure uniformity, the age of consent for purposes of deciding whether the conviction for the crime constitutes "sexual abuse of a minor" would have to be the lowest age provided by the law of any state.[9] It is unlikely in the extreme that Congress intended such a lowest common denominator result.

As we have observed, then, Congress gave the BIA little guidance in applying the phrase "sexual abuse of a minor," providing only that offenses falling within the definition include violations of both federal and state law. *See* 8 U.S.C. § 1101(a)(43). We conclude that the BIA acted in accordance with this mandate when it embraced a broad definition of the term adopted from a federal statute, which conforms with common usage and is consistent with relevant legislative history, and rejected the narrower definition appearing in the only federal criminal statute that uses the term to define a crime. The BIA "considered the matter in a detailed and reasoned fashion." *Michel,* 206 F.3d at 263 (internal quotation marks omitted). Neither the agency's reliance on 18 U.S.C. § 3509(a), supported by *Black's Law Dictionary* and its understanding of Congressional intent, to determine the meaning of "sexual abuse of a minor" under § 1101(a)(43)(A), nor the resulting definition, is unreasonable.[10] *See Michel,* 206 F.3d at 263. We therefore defer to the BIA's interpretation of the INA under *Chevron.*

2. *Whether Mugalli's Conviction for "Statutory Rape" Constitutes Sexual Abuse of a Minor.* The meaning of the phrase "sexual abuse of a minor" is a matter of federal law. But to determine whether Mugalli was convicted of sexual abuse, we must "look[] ... to the elements of the offense of [his state] conviction." *Sui,* 250 F.3d at 116. Because this involves a question of state law, as noted, we do not defer to the BIA's interpretation.

■ The statute under which Mugalli was convicted states: "A person is guilty of rape in the third degree when: ... [b]eing twenty-one years old or more, he

---

8. The government refers us to the law of only thirty-four states in which a variant of statutory rape is a crime. Respondent's Br. at 19–20, n.*.

9. In Arkansas, the age of consent is fourteen. *See* Ark.Code. Ann. § 5–14–103(4)(a). If that is the lowest age of consent in the nation, using Mugalli's reasoning, the BIA must adopt fourteen as the national age of consent. Otherwise, someone having sexual intercourse with a minor fourteen years of age or greater would be subject to removal if the act took place outside of Arkansas but not if it took place in Arkansas, a non-uniform result.

10. Judge Katzmann would not rely on the BIA's use of 18 U.S.C. 3509(a)(8) but would rather find that the BIA's determination in this case is reasonable in light of the definition of "sexual abuse" found in *Black's Law Dictionary.*

or she engages in sexual intercourse with another person to whom the actor is not married less than seventeen years old." New York Penal Law § 130.25–2 (1999). We conclude that a conviction under that section meets the BIA's interpretation of "sexual abuse of a minor" to include the employment, use, persuasion, inducement, enticement, or coercion of a person under 18 to engage in sexual intercourse. When Mugalli was convicted under that statute, he was thus convicted of an aggravated felony under 8 U.S.C. § 1101(a)(43)(A). We therefore agree with this aspect of the BIA's decision.

■ We note finally that the record stands remarkably mute on the details of the act for which Mugalli must now bear the consequences. Whether it arose out of the predations of an older man against an adolescent girl unable to protect herself emotionally or physically, rather than a mutual passion consummated five months too soon, we do not know. In either event, it was a crime under the laws of the State of New York. And in either event, the INS had the legal power to require Mugalli's removal from the United States for an "aggravated felony" under the

BIA's reasonable interpretation of §§ 1227(a)(2)(A)(iii) and 1101(a)(43)(A).[11]

### B. Certificate of Relief

Mugalli also argues that his conviction for third-degree rape has been effectively expunged by the Certificate of Relief issued to him by the sentencing court. The issue raised by Mugalli's argument is whether a state court criminal proceeding has produced a "conviction" for immigration law purposes where the state court has mitigated the formal judgment of conviction on the basis of a state rehabilitation statute.

As support for his argument, Mugalli relies principally on *Rehman v. INS*, 544 F.2d 71 (2d Cir.1976), in which the petitioner received a Certificate of Relief. We held:

> If the word "conviction" is to be construed rigidly, [petitioner] must be deported since his New York "conviction" still stands under New York law. We think, however, that a less formalistic approach is appropriate and more consistent with Congressional intent. So far as any automatic collateral consequences are concerned, [petitioner] has

---

11. Mugalli claims that his due process rights were violated because, in his INS "notice to appear," he was charged with "an aggravated felony as defined in section 101(a)(43)(A) of the Act, *a law relating to Rape*" (emphasis added). He was ordered removed by the BIA not for *rape* under § 101(a)(43)(A), but on the basis of his *sexual abuse of a minor* under that subsection.

While there is some question whether, under 8 U.S.C. § 1252(a)(2)(C), we have jurisdiction to review Mugalli's due process challenge on direct review, *see Calcano–Martinez v. INS*, 533 U.S. ——, 121 S.Ct. 2268, 2270 n.2, 150 L.Ed.2d 392 (2001), we need not tarry. The notice accurately reflected the INS's allegations that Mugalli was deportable because, *inter alia*, he was "on 5–14–99, convicted in the Oneida County Court of New

York State for the offense of Rape in the 3rd degree in violation of section 130.25.2 of the New York State Penal Law" and that he was therefore deportable under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act because he had "been convicted of an aggravated felony as defined in section 101(a)(43)(A) of the Act." To be sure, the notice then went on arguably to mischaracterize that subsection as "a law relating to Rape." Section 101(a)(43)(A) relates *also* to murder and sexual abuse of a minor and it is the latter for which Mugalli was ordered removed. But the notice, in its entirety, made clear to him the precise nature of the charges against him. There is also no doubt about the exact charges on which the removal order was based. There was no due process violation.

not been "convicted" under New York law.[12]

*Id.* at 74 (footnote added).

 At the time *Rehman* was decided, there was no federal statutory definition of "conviction" for deportation purposes. The term was therefore defined by courts on a case by case basis. The result was confusion. *See Lujan–Armendariz v. INS,* 222 F.3d 728, 736 (9th Cir.2000). Since *Rehman,* however, the INA has been amended and now provides a federal definition of "conviction":

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—
>
>> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
>>
>> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

8 U.S.C. § 1101(a)(48)(A); *see Lujan–Armendariz,* 222 F.3d at 736 (noting that the new definition of conviction adopted by Congress in 1996 "represents a Congressional attempt to clear up the general confusion over when a conviction exists for immigration purposes"). Here, Mugalli entered a plea of guilty, and the court entered a formal judgment of guilt. Under New York law, even though a Certificate of Relief is designed to mitigate the consequences of that conviction, it "does not eradicate or expunge the underlying conviction." *Morrisette v. Dilworth,* 59 N.Y.2d 449, 451 n. 2, 452 N.E.2d 1222, 1223 n. 2, 465 N.Y.S.2d 894, 895 n. 2 (1983). Thus, based on the BIA's reasonable conclusion as to the meaning of "conviction" and our understanding of the significance of the Certificate of Relief under New York Law, the Certificate of Relief does not immunize him from the deportation consequences of that conviction.

## CONCLUSION

Because Mugalli was convicted of an aggravated felony, we do not have jurisdiction over his petition of review. The petition is therefore dismissed.

---

**12.** Our decision in *Rehman* also relied on the fact that "full expunger of a federal conviction would have been available in an analogous either because he was a first time offender or under the Federal Youth Corrections Act." 544 F.2d at 74. There is no analogous federal relief in this case.