06-5163-ag
James v. Mukasey

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued: December 14, 2007                    Decided: March 25, 2008)

Docket No. 06-5163-ag

_____

USHIAN KAYON JAMES,

*Petitioner*,

− v. −

MICHAEL B. MUKASEY,[1] Attorney General,

*Respondent.*

_____

Before: CALABRESI, CABRANES, and SOTOMAYOR, *Circuit Judges.*

_____

The petitioner seeks review of a decision of the Board of Immigration Appeals ("BIA")

finding him removable for having committed an aggravated felony.  While we lack jurisdiction to

consider the petitioner's unexhausted adjustment of status claim, we have jurisdiction to review

whether the BIA properly deemed the petitioner's conviction an aggravated felony.  We conclude

that the agency's decision on this issue was based on an incorrect premise in that it assumed we treat

the petitioner's statute of conviction, New York Penal Law section 260.10, as divisible when in fact

_____

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B.
Mukasey has been substituted for former Attorney General Alberto R. Gonzales as the
respondent in this case.

1

that is an open question. Accordingly, the petition for review is GRANTED in part and DISMISSED in part, the order of removal is VACATED, and the case is REMANDED to the BIA for further proceedings consistent with this opinion.

_____

NITA DOBROSHI, Law Offices of Spar & Bernstein, P.C. (Michelle Alexander, *on the brief*), New York, N.Y., *for Petitioner*.

JANICE K. REDFERN, Office of Immigration Litigation, U.S. Department of Justice, (Peter D. Keisler, Assistant Attorney General, Civil Division, Linda S. Wernery, Assistant Director, *on the brief*), Washington, D.C., *for Respondent*.

_____

CALABRESI, *Circuit Judge*:

Petitioner Ushian Kayon James ("James") petitions for review of an October 30, 2006 decision of the BIA affirming a July 27, 2006 order of removal by Immigration Judge ("IJ") Alan A. Vomacka. That order was based on a finding that James's state misdemeanor conviction for "Endangering the Welfare of a Child" was an aggravated felony within the meaning of 8 U.S.C. § 1101(a)(43)(A) ("sexual abuse of a minor").

BACKGROUND

James, a twenty-seven-year-old native and citizen of Jamaica, was admitted to the United States in 1999 as a lawful permanent resident. Sometime in 2002, when he was twenty-two, he entered into a relationship with the daughter of a family acquaintance. The details of the relationship are not entirely clear, but eventually James was charged with rape in the third degree, pursuant to New York Penal Law section 130.25. The felony complaint – later reduced to a "misdemeanor information" – alleged that in February of 2003, James, then twenty-two years old, engaged in sexual intercourse with a sixteen-year-old female. James pleaded guilty in the First District Court of New York, County of Suffolk, to "Endangering the Welfare of a Child,"

2

pursuant to New York Penal Law section 260.10.[2] A conviction was entered on October 3, 2003, and James was sentenced to three years' probation.

On September 15, 2005, the Department of Homeland Security ("DHS") issued James a Notice to Appear ("NTA"). The NTA charged him with removability under 8 U.S.C. § 1227(a)(2)(E)(i) for being convicted of "a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment." The IJ held a removal hearing on November 29, 2005, at which James admitted the factual allegations in the NTA but denied the charge of removability. In a motion to terminate the proceedings, James argued that DHS had not shown that he had been convicted of "child abuse" as defined in the Immigration and Nationality Act ("INA"). DHS then lodged an additional charge of removability, pursuant to a different provision of the INA: Under 8 U.S.C. § 1227(a)(2)(A)(iii), the DHS claimed, James was removable for having been convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(A), namely sexual abuse of a minor. James objected to this charge as well.

On July 27, 2006, the IJ issued an order denying James's motion to terminate and sustaining both charges of removability. The IJ's decision was based on the facts alleged in the felony complaint. Because that complaint had been converted into a misdemeanor information,

---

[2] A person is guilty of endangering the welfare of a child under this statute when:

> 1. He knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his life or health; or

> 2. Being a parent, guardian or other person legally charged with the care or custody of a child less than eighteen years old, he fails or refuses to exercise reasonable diligence in the control of such child to prevent him from becoming an "abused child," a "neglected child," a "juvenile delinquent" or a "person in need of supervision," as those terms are defined in articles ten, three and seven of the family court act.

N.Y. Penal Law § 260.10. James was convicted pursuant to the first prong of the statute.

pursuant to New York Criminal Procedure section 180.50,[3] the IJ concluded that "the physical conduct described between [James] and the . . . complaining witness" – sexual intercourse – "is in fact the conduct [James] pleaded guilty to when he entered a plea of guilty to endangering the welfare of a child." The IJ then found that James's conviction "does constitute a crime of 'child abuse' or at the very least may be considered some type of 'child neglect,'" under 8 U.S.C. § 1227(a)(2)(E)(i), and that it also constituted the aggravated felony of "sexual abuse of a minor" under 8 U.S.C. § 1101(a)(43)(A).

James appealed the aggravated felony finding to the BIA, arguing that the IJ had misapplied the law and that his 2004 marriage to a U.S. citizen made him eligible for adjustment of status, a form of relief "not made available to him at his immigration court hearing." In an order dated October 30, 2005, the BIA affirmed the IJ's decision. First, the BIA decided that the statute of conviction, New York Penal Law section 260.10, was, under the law of this Circuit, divisible. The BIA observed that, while that statute "does not explicitly refer to any type of sexual content," it "encompasses some offenses which would qualify as 'sexual abuse.'" In such circumstances, the BIA noted, the Second Circuit allows the agency to "consult the judgment and charging papers in an effort to 'narrow down the statutory options' and identify the precise offense of which the respondent was convicted." Then, citing the felony complaint and the plea transcript, the BIA determined that James was, in fact, convicted of a crime within the meaning of 8 U.S.C. § 1101(a)(43)(A). As for James's adjustment of status claim, the BIA observed that

---

[3] This section permits the local criminal court to inquire into whether the facts and evidence relating to the conduct underlying a felony complaint provide a basis for charging the defendant with a non-felony offense, and if so, whether the charge should be so reduced. N.Y. Crim. Proc. § 180.50(1). If "the court is satisfied that there is reasonable cause to believe that the defendant committed an offense other than a felony," § 180.50(2), and "[i]f the factual allegations of the felony complaint and/or any supporting depositions are legally sufficient to support the charge that the defendant committed the non-felony offense in question," *id.* § 180.50(3)(a), the court may convert the felony complaint into an information, *id.* § 180.50(3)(a)(iii).

4

James had not sought this form of relief below, that he had not submitted appropriate documentation, and that he had failed to comply with the procedures for filing a motion to reopen to seek adjustment of status, *see* 8 C.F.R. § 1003.2(c)(1). Accordingly, the BIA found a remand unwarranted.

James filed with our Court a timely petition for review, in which he argues that his case should be remanded (1) because a conviction for Endangering the Welfare of a Child under New York law does not constitute an aggravated felony for purposes of the INA, (2) because the BIA exceeded its jurisdiction when it considered the facts underlying his conviction, and (3) because he is eligible for relief from removal in the form of adjustment of status.

DISCUSSION

I.     Jurisdiction and Standard of Review

As of the codification of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, div. C., 110 Stat. 3009-546 (Sept. 30, 1996), we lack jurisdiction to review any final order of removal against an alien who is deportable because he or she was convicted of an aggravated felony, save for constitutional claims and questions of law. 8 U.S.C. § 1252(a)(2)(C). "This jurisdictional bar arises if: (1) the petitioner is an alien; and (2) he is deportable under one of the offenses enumerated in 8 U.S.C. § 1101(a)(43)." *Mugalli v. Ashcroft*, 258 F.3d 52, 54-55 (2d Cir. 2001). We retain jurisdiction, however, to determine whether this jurisdictional bar applies – that is, whether a petitioner satisfies the jurisdictional facts. *Id.* at 55. "The determination of our jurisdiction is exclusively for the court to decide." *Id.* (internal quotation marks omitted).

Here, the BIA adopted the IJ's reasoning and offered additional commentary. Consequently, we review the decision of the IJ as supplemented by the BIA. *Wala v. Mukasey*, 511 F.3d 102, 105 (2d Cir. 2008). We must defer to the BIA's determination, in accordance with

5

the Supreme Court's decision in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984), when our jurisdiction depends on the definition of a phrase used in the INA, a statute that the BIA administers, and "when the intent of Congress is unclear and the agency's interpretation is reasonable." *Mugalli*, 258 F.3d at 55 (internal quotation marks omitted). But when, in the course of interpreting the INA, the BIA has interpreted state or federal criminal laws, we review its decision *de novo*. *Id.* In this case, then, "we defer to the BIA's interpretation of § 1101(a)(43)(A) in determining the meaning of 'sexual abuse of a minor,'" but "[w]e give no deference . . . to the BIA's decision that [the petitioner's] conviction under New York law . . . meets the BIA's interpretation of 'sexual abuse of a minor.'" *Id.* at 56.

II.     The Aggravated Felony Finding

A.     Governing Law

Under the INA, "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). The INA defines "aggravated felony" to include "sexual abuse of a minor." 8 U.S.C. § 1101(a)(43)(A). "[T]he language of the statute yields no clear evidence," however, "of congressional intent as to the scope of th[at] phrase," *Mugalli*, 258 F.3d at 56, so the BIA has "invoke[d] . . . as a guide" the broad definition of "sexual abuse of a minor" in 18 U.S.C. § 3509(a), *In re Rodriguez-Rodriguez*, 22 I. & N. Dec. 991, 995-96 (B.I.A. 1999). According to section 3509, "the term 'sexual abuse' includes the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in, or assist another person to engage in, sexually explicit conduct or the rape, molestation, prostitution, or other form of sexual exploitation of children, or incest with children"; "sexually explicit conduct" is also defined broadly, to include "actual or simulated . . . sexual intercourse, including sexual contact in the manner of genital-genital, oral-genital, anal-genital, or oral-anal contact, whether between persons of the same or of opposite sex." 18 U.S.C. § 3509(a). We have found

6

that the BIA's adoption of § 3509(a) is reasonable, and have accorded it *Chevron* deference. *Mugalli*, 258 F.3d at 60.

B.      Categorical and Modified Categorical Approaches

We have adopted a "categorical approach" to decide whether a crime of conviction fits within the definition of aggravated felony in § 1101(a)(43)(A).  *Santos v. Gonzales*, 436 F.3d 323, 325 (2d Cir. 2006) (per curiam).  "Under this approach . . . 'the singular circumstances of an individual petitioner's crimes should not be considered, and only the minimum criminal conduct necessary to sustain a conviction under a given statute is relevant[.]'"  *Dalton v. Ashcroft*, 257 F.3d 200, 204 (2d Cir. 2001) (alteration) (quoting Calabresi, *J.*, dissenting in part, in *Michel v. INS*, 206 F.3d 253, 270 (2d Cir. 2000)).  We have, however, modified this approach in one important respect:  When "a criminal statute encompasses diverse classes of criminal acts – some of which would categorically be grounds for removal and others of which would not – we have held that [the] statute[] can be considered 'divisible'"; the agency may then "refer[] to the record of conviction for the limited purpose of determining whether the alien's conviction was under the branch of the statute that permits removal."  *Dickson v. Ashcroft*, 346 F.3d 44, 48-49 (2d Cir. 2003).  "The record of conviction includes, *inter alia*, the charging document, a plea agreement, a verdict or judgment of conviction, a record of the sentence, or a plea colloquy transcript."  *Wala*, 511 F.3d at 108 (internal quotation marks omitted).

C.      Remand is Appropriate To Allow the BIA To Consider Whether James's Statute of
        Conviction is Divisible

In this case, the BIA "first note[d] that [this] . . . matter has arisen within the jurisdiction of the United States Court of Appeals for the Second Circuit," where, according to the BIA, "despite the general prohibition against inquiry into the factual circumstances of the crime underlying a removal order, a limited review of the record may be warranted where the statute of conviction is divisible."  The BIA then reasoned that, since it is possible for a person to violate

7

New York Penal Law section 260.10 with or without committing a sexual offense, the case law of our Circuit permits inquiry into James's underlying record of conviction. In other words, the IJ and BIA assumed that we would treat section 260.10 as divisible. We have since made clear, however, that with regard to statutes of conviction like James's, the question of divisibility is an open one. "Up to this point," we observed recently in *Dulal-Whiteway v. U.S. Department of Homeland Security*, "we have explicitly found statutes divisible only where the removable and non-removable offenses they describe are listed in different subsections or comprise discrete elements of a disjunctive list of proscribed conduct"; "we have *not* explicitly queried whether this logic extends to a statute . . . where only one type of generic conduct . . . is proscribed, but an alien can commit the conduct both in ways that would render him removable . . . and in ways that would not . . . ." 501 F.3d 116, 126-27 (2d Cir. 2007) (emphasis added). The statute in *Dulal-Whiteway* (proscribing fraud to obtain things valuing over $1,000) is one such a statute. *Id.* at 126. The statute in this case is another.[4]

We further observed in *Dulal-Whiteway* that there are at least three ways of approaching such a statute – none of which we have explicitly adopted or rejected. We could "find[] divisible *only* those statutes where the alternative means of committing a violation, some of which constitute removable conduct and some of which do not, are enumerated as discrete alternatives." *Id.* at 127 (emphasis added). Or we could "take the position that all statues of conviction may be considered 'divisible' regardless of their structure, so long as they contain an element or elements that could be satisfied either by removable or non-removable conduct." *Id.* at 128. And somewhere in the middle is a third approach, developed by the Third Circuit, under which a criminal statute may be considered divisible if *either* (1) the statute of conviction is

---

[4] New York Penal Law § 260.10 is divided into two subsections, but neither subsection is categorically "sexual abuse of a minor." Both subsections proscribe one type of generic conduct that can be committed in ways that would render a person removable and in ways that would not.

8

phrased in the disjunctive or divided into subsections such that "some variations of the crime of conviction meet the aggravated-felony requisites and others do not," *or* (2) the relevant removability provision "invite[s] inquiry into the facts underlying the conviction at issue." *Singh v. Ashcroft*, 383 F.3d 144, 161, 162 (3d Cir. 2004)).[5] "Neither Supreme Court nor Second Circuit precedent," we concluded in *Dulal-Whiteway*, "compels a conclusion one way or the other." 501 F.3d at 127.[6] And no case since *Dulal-Whiteway* has provided greater guidance as to how we would treat a statute like New York Penal Law section 260.10. Accordingly, the IJ and BIA based their decision on an incorrect premise.

This is not a case in which we are clearly required to remand to the BIA for an initial decision on the divisibility of James's statute of conviction, for the BIA is not charged with the administration of this law. *See, e.g.*, *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands."); *Ming Lam Sui v. INS*, 250 F.3d 105, 112-13 (2d Cir. 2001) (noting that the BIA "is not charged with the administration of [state or federal criminal

---

[5] According to *Singh*, a removability provision "invite[s] inquiry into the facts underlying the conviction" when, for example, "it expresses such a specificity of fact that it almost begs an adjudicator to examine the facts at issue." 383 F.3d at 161. A "prototypical example," in the Third Circuit's view, is 8 U.S.C. § 1101(a)(43)(M)(i), which defines an "aggravated felony" to include an offense involving fraud or deceit "in which the loss to the victim or victims exceeds $10,000." *Id.* (internal quotation marks omitted). An example of a removability provisions that does *not* invite such inquiry is 8 U.S.C. § 1101(a)(43)(J), which defines "aggravated felony" to include certain gambling and racketeering offenses "for which a sentence of one year imprisonment or more may be imposed." *Id.* at 162 (internal quotation marks omitted). The Third Circuit also ultimately concluded that the removability provision at issue in the case before us, 8 U.S.C. § 1101(a)(43)(A), does not call for a factual investigation. *See id.* at 164.

[6] We did not decide this issue in *Dulal-Whiteway* because the petitioner there had not challenged the divisibility of his statute of conviction. *Dulal-Whiteway*, 501 F.3d at 128; *accord Wala*, 511 F.3d at 109. James, however, has consistently argued – before the IJ, before the BIA, and now before us – that he should not be found removable because his statute of conviction does not contain a "sexual element." In other words, he has submitted throughout these proceedings that, categorically, his crime is not one that constitutes "sexual abuse of a minor."

laws]"); *Michel*, 206 F.3d at 262("[C]ourts owe no deference to an agency's interpretation of state or federal criminal laws, because the agency is not charged with the administration of such laws."). Nevertheless, we deem it the wiser and more prudent course to give the BIA an opportunity to consider, in the first instance and in light of our recent pronouncements on this issue, whether New York Penal Law section 260.10 should properly be treated as divisible (thereby allowing inquiry into the facts underlying the conviction), or, rather, whether the categorical approach that we have applied in other cases precludes inquiry into the singular circumstances of James's crime.[7]

D.      Parameters for Consideration of James's Record of Conviction

James has also argued on appeal that after deeming his statute of conviction divisible, the BIA impermissibly considered the details of the criminal complaint and the facts admitted in his plea minutes to determine whether he was convicted of an aggravated felony, even though he neither pleaded guilty to, nor was convicted of, the charge set out in the original complaint. We need not reach the merits of this argument, since we are remanding this case to allow the BIA to assess the divisibility of James's statute of conviction. But we note, for purposes of judicial economy, that several decisions of our Court – bearing directly on this issue – have come down since the BIA's decision in this case.

---

[7] At oral argument, for the first time, the Government encouraged us to deem remand futile because of James's failure to appeal the IJ's decision regarding his removability under 8 U.S.C. § 1227(a). In other words, the Government has argued that the same result – a finding of removability – will inhere no matter what occurs on remand. We reject this contention. Should the BIA, on remand, conclude that James was not convicted of an aggravated felony, a bar to cancellation of removal would be eliminated. *See* 8 U.S.C. § 1229b(a)(3) (providing that conviction of an aggravated felony renders an alien ineligible for cancellation of removal). From the petitioner's perspective, then, the different possible outcomes of this remand have materially different consequences for the ultimate disposition of his case.

10

In *Dulal-Whiteway*, the petitioner was convicted of fraud and found removable on the basis of a restitution order attributing to him $20,824.09 in losses. 501 F.3d at 119. We vacated the removal order. Breaking new ground, we held "that the BIA, in determining whether an alien is removable based on a conviction for an offense set forth in the INA, may rely only upon information appearing in the record of conviction that would be permissible under the *Taylor-Shepard* approach in the sentencing context." *Id.* at 131. That is, "[f]or convictions following a plea, the BIA may rely only upon facts to which a defendant actually and necessarily pleaded in order to establish the elements of the offense, as indicated by a charging document, written plea agreement, or plea colloquy transcript." *Id.* Since Dulal's record of conviction did not establish that his crime involved loss over $10,000, and since the amount of loss indicated in the restitution order "was not necessarily limited to the admissions in [Dulal's] plea or to the elements alleged," the order of removal was improper. *Id.* at 134.[8]

We reached a similar result in *Wala*, where the BIA determined that the petitioner had committed a crime involving moral turpitude (and was therefore removable) because, the BIA found, he intended to commit a permanent taking. 511 F.3d at 104-05. We noted that the petitioner had admitted to taking various items from the victim's house, thereby establishing the elements of burglary with intent to commit a larceny under Connecticut law, but that he had not admitted to taking these items with the intent to appropriate them permanently. *Id.* at 109. We therefore vacated the removal order. "[A]lthough it may have been reasonable for the BIA to

---

[8] The BIA has evinced some disagreement with *Dulal-Whiteway*. *See In re Babaisakov*, 24 I. & N. Dec. 306, 317 (B.I.A. Sept. 28, 2007) (stating, in a case involving the removability provision at issue in *Dulal-Whiteway*, that no "sound legal principle . . . constrains inquiry to the record of conviction if the search [for information demanded by the removal statute] involves aspects of the crime that go beyond the elements of the offense"). We express no opinion as to the validity of the BIA's decision, or to whether it is the kind of decision to which *Chevron* deference is due.

11

infer that Wala intended permanently to keep the items he admitted taking," we explained, "the modified categorical approach does not permit the BIA to draw inferences of this kind." *Id.*

Finally, in the sentencing context, which has long informed our jurisprudence regarding aggravated felony findings under the INA, we recently remanded a case because it was unclear to what extent the District Court based its sentencing enhancement (for a "pattern of activity involving the sexual abuse or exploitation of a minor") on unsubstantiated charged conduct. *See United States v. Juwa*, 508 F.3d 694, 700-01 (2d Cir. 2007). We reminded the District Court that "[f]actual matters considered as a basis for sentence must have some minimal indicium of reliability beyond mere allegation," and that "an indictment is not meant to serve an evidentiary function. Its primary purpose is to acquaint the defendant with the specific crime with which he is charged . . . ." *Id.* at 701 (internal quotations marks omitted) (alteration in original).

In this case, the IJ and BIA relied upon a factual allegation in the charging instrument – that James had sexual intercourse with a sixteen-year-old when he was twenty-two – to conclude that James was convicted of sexual abuse of a minor. But this factual allegation was not "actually and necessarily pleaded" to in order to establish the elements of endangering the welfare of a child. *Dulal-Whiteway*, 501 F.3d at 131. New York Penal Law section 260.10 does not require engagement in sexual intercourse, *see People v. Chase*, 720 N.Y.S.2d 707, 708 (2d Dep't 2000), and James did not so plead; he admitted to having had "sexual contact with a minor."

"Sexual contact" does, of course, fall within the broad definition of "sexual abuse" that the BIA has adopted. *See Rodriguez-Rodriguez*, 22 I. & N. Dec. at 996-97 (invoking 18 U.S.C. § 3509(a) as a guide in defining "sexual abuse"); 18 U.S.C. § 3509(a)(8), (9) (defining "sexual abuse" to include "sexually explicit conduct," and "sexually explicit conduct" to include "sexual

12

contact"). But it is by no means clear that admitting to "sexual contact with a minor" *under New York law* would be enough to establish "sexual abuse of a minor" under the INA. For one thing, New York law has defined "sexual contact" to include "any touching," whether by the victim or by the actor, "of the sexual or other intimate parts of a person not married to the actor for the purpose of gratifying sexual desire of either party." N.Y. Penal Law § 130. Thus, under New York law, a kiss on the mouth constitutes "sexual contact." *See People v. Rondon*, 579 N.Y.S.2d 319, 320-21 (N.Y. Crim. Ct. 1992) ("[T]his court holds that a kiss on the mouth without the insertion of a tongue can be considered a touching of an *intimate* part, constituting the essential element of sexual abuse."); *see also People v. Morbelli*, 544 N.Y.S.2d 442, 445-46 (N.Y. Crim. Ct. 1989) (contact with the leg); *People v. Belfrom*, 475 N.Y.S.2d 978, 980-81 (N.Y. Sup. Ct. 1984) (contact with the navel). This definition is broader than that of the federal statute from which the BIA has drawn guidance. *See* 18 U.S.C. § 3509(a)(9)(A) ("[S]exual contact means the intentional touching, either directly or through clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify sexual desire of any person.").

For another thing, New York law does not categorize as criminal sexual conduct "sexual contact" between persons of the ages that James and his victim were at the time of the offense. And while such contact may result in a conviction for Endangering of the Welfare of a Child, that crime is not listed in the chapter of New York's penal code dealing with sex offenses. *See* N.Y. Penal Law § 130, *et seq.* For this reason, James's statute of conviction is distinguishable from the Connecticut statute that we considered in *Santos*. *See Santos*, 436 F.3d at 325 (holding that where the petitioner pleaded guilty to violating a statute that criminalizes contact with the intimate parts of a child under the age of sixteen in a sexual and indecent manner, his conviction was one of sexual abuse of a minor under the INA).

13

In sum, should the BIA conclude that James's statute of conviction is divisible and that consultation of James's record of conviction is therefore appropriate, we urge the BIA to adhere to the principles we have set forth in *Dulal-Whiteway*, *Wala*, and *Juwa*. And should the BIA take into account James's admission of "sexual contact with a minor," we encourage the BIA to consider carefully what that term means under New York law.

III.    Eligibility for Adjustment of Status

At the end of his appellate brief, James submits that he is eligible for relief from removal in the form of adjustment of status, pursuant to 8 U.S.C. § 1255(a). We lack jurisdiction to consider this claim because at the time of his hearing before the IJ, James had not filed an application for adjustment of status. He has therefore failed to exhaust his administrative remedies with respect to this form of relief. *See* 8 U.S.C. § 1252(d)(1), (b)(4)(A); *Karaj v. Gonzales*, 462 F.3d 113, 119 (2d Cir. 2006) (stating that every category of relief a petitioner raises in this Court must first be raised before the agency).

CONCLUSION

For the foregoing reasons, we believe it prudent to allow the BIA to consider in the first instance whether, in light the fact that the divisibility of a statute like New York Penal Law section 260.10 is an open question in our Circuit, James's conviction for Endangering the Welfare of a Child under New York law constitutes the aggravated felony of sexual abuse of a minor under the INA. We lack jurisdiction, however, to consider James's eligibility for adjustment of status. Accordingly, we GRANT in part and DISMISS in part James's petition for review, VACATE the BIA's removal order, and REMAND to the BIA for further proceedings consistent with this decision.

14