22-6421(L)
Garcia Pinach v. Bondi

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2024
Nos. 22-6421 (L), 24-26 (CON)

JOAQUIN GARCIA PINACH,

*Petitioner,*

*v.*

PAMELA BONDI,
UNITED STATES ATTORNEY GENERAL,

*Respondent.*

On Petition for Review of an Order of
the Board of Immigration Appeals.

ARGUED: DECEMBER 6, 2024
DECIDED: AUGUST 4, 2025

Before: SACK, NARDINI, and LEE, *Circuit Judges*.

Petitioner Joaquin Garcia Pinach, a citizen of the Dominican Republic and a lawful permanent resident of the United States, was

ordered removed on the grounds that his conviction for sexual abuse in the second degree under New York Penal Law ("NYPL") § 130.60(2) constitutes "sexual abuse of a minor," and is therefore an "aggravated felony" subjecting him to removal, 8 U.S.C. §§ 1101(a)(43)(A), 1227(a)(2)(A)(iii). About a year later, Garcia moved to reopen his removal proceedings, but the Board of Immigration Appeals ("BIA") denied the motion as untimely and concluded that he did not warrant equitable tolling. Garcia now petitions for review of the BIA's decisions.

We DISMISS Garcia's petition in No. 22-6421, which challenges his removal order. As we recently held in *Debique v. Garland*, 58 F.4th 676, 680–84 (2d Cir. 2023), a conviction under NYPL § 130.60(2) is categorically an aggravated felony. We reject Garcia's arguments (1) that *Debique* is not binding on the grounds that it purportedly left open certain arguments as to why NYPL § 130.60(2) is broader than the federal definition of sexual abuse of a minor, and (2) that our decision in *Debique* was entirely premised on *Chevron* deference to the BIA's interpretation of "sexual abuse of a minor," and that its *stare decisis* force has therefore been undermined by the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). And in any event, we remain independently persuaded of the correctness of *Debique*'s holding that second-degree sexual abuse under NYPL § 130.60(2) constitutes "sexual abuse of a minor" under § 1101(a)(43)(A).

We DENY Garcia's petition in No. 24-26, which challenges the BIA's denial of his motion to reopen removal proceedings. The BIA

had a reasonable basis for concluding that Garcia failed to show that he acted with due diligence for the entire period between when the 90-day deadline for such a motion had expired, and when he filed his motion to reopen approximately one year later. Accordingly, the BIA did not abuse its discretion in declining to grant equitable tolling and therefore denying the motion as untimely.

------

KYLE BARRON, The Legal Aid Society, New York, NY (Julie Dona, John DeBellis, The Legal Aid Society, New York, NY, Aadhithi Padmanabhan, University of Maryland School of Law, Federal Appellate Immigration Clinic, Baltimore, MD, *on the brief*), *for Petitioner*.

JEFFREY M. HARTMAN, Trial Attorney, Office of Immigration Litigation (Brian M. Boynton, Principal Deputy Assistant Attorney General, Song Park, Assistant Director, Jessica A. Dawgert, Senior Litigation Counsel, *on the brief*), Civil Division, U.S. Department of Justice, Washington, DC, *for Respondent*.

------

WILLIAM J. NARDINI, *Circuit Judge*:

Petitioner Joaquin Garcia Pinach ("Garcia"), a citizen of the Dominican Republic and a lawful permanent resident of the United States, was ordered removed after he was convicted of sexual abuse

3

in the second degree under New York Penal Law ("NYPL") § 130.60(2), which involves sexual contact with a victim younger than 14 years old.  An immigration judge ("IJ"), and later the Board of Immigration Appeals ("BIA"), determined that his conviction was an "aggravated felony" under 8 U.S.C. § 1227(a)(2)(A)(iii) because it constituted the "sexual abuse of a minor" under 8 U.S.C. § 1101(a)(43)(A).  A year after the BIA's decision, we reached the same conclusion in *Debique v. Garland*, 58 F.4th 676, 680–84 (2d Cir. 2023)— that is, we held that a conviction under NYPL § 130.60(2) is categorically an aggravated felony.

Garcia argues that our Court is not bound by *Debique* for two reasons.  First, he contends that our Court in *Debique* left open certain arguments he now advances for why NYPL § 130.60(2) is broader than the federal definition of "sexual abuse of a minor": principally, that the New York law (unlike federal law, he says) fails to require a minimum age differential between the victim and perpetrator.  Second, he points out that our decision in *Debique* deferred to the BIA's interpretation of the statutory term "sexual abuse of a minor," based on *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984).[1]  Because the Supreme Court has since overruled *Chevron* in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), Garcia argues that we are obliged to revisit (and revise) our statutory interpretation of § 1101(a)(43)(A).

---

[1] Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

We are unpersuaded.  In *Debique*, we expressly acknowledged the argument that a state statute must require an age differential to satisfy the federal definition of sexual abuse, 58 F.4th at 683 n.6; yet this did not dissuade us from holding as a categorical matter that a violation of NYPL § 130.60(2) is "sexual abuse of a minor."  Our panel is not free to second-guess the *Debique* panel's conclusion that it is unnecessary to resolve the age-differential question in other circumstances to conclude that NYPL § 130.60(2) (which covers victims younger than 14 years old) is a categorical match for "sexual abuse of a minor," and therefore an aggravated felony.  As to *Loper Bright*, the Supreme Court explained in that decision that "[t]he holdings of [prior] cases . . . are still subject to statutory *stare decisis* despite our change in interpretive methodology."  603 U.S. at 412. Accordingly, *Loper Bright* provides no basis for us to disregard *Debique*.  In any event, both *Debique* and our earlier precedents relied only partly on deference to the BIA's interpretation when deciding what constitutes "sexual abuse of a minor" for purposes of federal law; they also relied on other interpretive methods that are unaffected by *Loper Bright*.  Moreover, apart from any considerations of *stare decisis* and *Loper Bright*, we remain independently persuaded of the correctness of *Debique*'s holding that second-degree sexual abuse under NYPL § 130.60(2) constitutes "sexual abuse of a minor" under § 1101(a)(43)(A).  We therefore adhere to our holding in *Debique*, conclude that Garcia is removable for an aggravated felony, and DISMISS his petition for review of his removal order.

Garcia also seeks review of a second BIA decision, from November 2023. There, the BIA denied his untimely motion to reopen his removal proceedings based on purportedly new evidence that his diabetes condition (which he knew about during his removal proceedings) also affected his mental health at the time he committed his sexual abuse offense. Garcia concedes that his motion was untimely, but he argues that the BIA should have equitably tolled the period after his 90-day deadline to file the motion. We disagree. A year passed after his first BIA appeal before Garcia obtained his new evidence, and the BIA had a reasonable basis for concluding that he failed to exercise due diligence throughout the period before he filed his motion. We therefore DENY Garcia's petition to review the BIA's denial of his motion to reopen.

I. **Background**

**A. Conviction for Second-Degree Sexual Abuse in New York**

Garcia is a native and citizen of the Dominican Republic who was admitted to the United States as a lawful permanent resident in 1981 at the age of 17. He has been arrested twice since then.

In 1988, he was charged with driving while intoxicated, and he pled guilty to violating New York Vehicle and Traffic Law § 1192.1. He was sentenced to fifteen days in prison, plus a $250 fine.

His second arrest came in 2019 after a seven-year-old girl, who was related to Garcia's longtime girlfriend, accused him of "rubb[ing] her vagina underneath her underwear with one of his hands."

6

App'x at 669.  He was initially charged with attempted sexual abuse in the first degree under NYPL § 130.65(3) and sexual abuse in the second degree under NYPL § 130.60(2).  On March 22, 2019, Garcia pled guilty to the second count—sexual abuse in the second degree, which is a misdemeanor under New York law.[2]  On October 1, 2020, he was sentenced to a one-year conditional discharge and a $1,000 fine.  He was also required to register as a sex offender.  The court entered a five-year protective order barring Garcia from having any contact with his victim.

## B.  Immigration Court Proceedings

On December 14, 2021, the Department of Homeland Security ("DHS") through Immigration and Customs Enforcement ("ICE") initiated removal proceedings against Garcia.  As relevant here, DHS charged that Garcia was removable under 8 U.S.C. § 1227(a)(2)(A)(iii), because his conviction for second-degree sexual abuse was an

---

[2] Section 130.60 provides as follows:

> A person is guilty of sexual abuse in the second degree when he or she subjects another person to sexual contact and when such other person is:
> 1. Incapable of consent by reason of some factor other than being less than seventeen years old; or
> 2. Less than fourteen years old.
> Sexual abuse in the second degree is a class A misdemeanor.

"aggravated felony," which includes "sexual abuse of a minor" under 8 U.S.C. § 1101(a)(43)(A).[3]

Garcia fought the charges of removability.  He moved to terminate the proceedings, arguing that (among other things) his offense of conviction was not categorically an aggravated felony.  He contended that NYPL § 130.60(2) criminalizes a broader range of conduct than what constitutes "sexual abuse of a minor" for purposes of federal immigration law, for several reasons.  First, he argued that the New York law was "overbroad because it criminalizes the touching of body parts that are not listed in the definition of sexual abuse at 18 U.S.C. § 3509(a)(8)," which is a statute that provides procedural protections for child victims and witnesses in federal criminal cases.  App'x at 726.  Second, he acknowledged that this Court had previously held, in *Rodriguez v. Barr*, 975 F.3d 188 (2d Cir. 2020), that first-degree sexual abuse under NYPL § 130.65(3) is categorically an offense of "sexual abuse of a minor," and that both statutes prohibit the same types of conduct, defined as "sexual contact."  But he distinguished New York's offense of second-degree sexual abuse on the theory that it is a misdemeanor with a lower maximum punishment (364 days, compared to 7 years for the first-degree offense), and that it covers older victims (under 14 years, as

---

[3] The notice to appear also charged that Garcia was removable under 8 U.S.C. § 1227(a)(2)(E)(i), because his conviction was for "a crime of child abuse." The IJ upheld this charge of removability, but the BIA ultimately declined to reach it, once it affirmed the IJ's holding that his conviction was an aggravated felony. Because that basis for removability is not before us on this petition for review, we make no further reference to it.

8

opposed to under 11 years for first-degree abuse).  Third, he argued that NYPL § 130.60(2) was overbroad as to *mens rea*, because it does not require that the defendant know the victim's age.

Garcia also sought various forms of relief from removal.  He applied for asylum and withholding of removal under 8 U.S.C. §§ 1158 and 1231(b)(3); both withholding of removal and deferral of removal under the Convention Against Torture ("CAT"), Dec. 10, 1984, 1465 U.N.T.S. 85 (1984), 8 C.F.R. §§ 1208.16(c), 1208.17; and cancellation of removal for certain permanent residents under 8 U.S.C. § 1229b(a).  As the sole witness in support of those applications, Garcia testified before an IJ that he feared returning to the Dominican Republic because he had no remaining family there, had no place to live, and feared mistreatment by the police (even though he reported no prior abuse by Dominican police officers during his visits to that country).

On April 4, 2022, the IJ denied Garcia's motion to terminate, sustained the charges of removability, and entered a final order of removal.  Several of the IJ's rulings are pertinent here.  First, the IJ determined that Garcia's conviction for sexual abuse in the second degree qualified as an aggravated felony.  This finding rendered him not only removable, but also ineligible for asylum and cancellation of removal.  *See* 8 U.S.C. §§ 1158(b)(2)(A)(ii), 1158(b)(2)(B)(i), 1229b(a)(3). Second**,** **t**he IJ concluded that his conviction was a "particularly serious crime," which further rendered Garcia ineligible for withholding of removal under the Immigration and Nationality Act ("INA") or the CAT.  *See* 8 U.S.C. § 1231(b)(3)(B)(ii), 8 C.F.R.

9

§ 1208.16(c)(4). Last, the IJ declined to grant Garcia deferral of removal under the CAT, on the grounds that he had failed to present sufficient evidence to establish that his removal to the Dominican Republic would likely subject him to harm, much less harm amounting to torture.

## C. Proceedings Before the BIA

Garcia timely appealed the IJ's decision to the BIA.

As most relevant here, Garcia reprised his arguments before the IJ (with some minor tweaks) about why his conviction under NYPL § 130.60(2) should not be considered an aggravated felony: (1) his New York statute of conviction criminalized sexual contact with body parts not listed in 18 U.S.C. § 3509(a)(8)'s definition of sexual abuse; (2) this Court's decision in *Rodriguez* was distinguishable because it involved an offense of sexual abuse against children under the age of 11, whereas his statute of conviction covers older victims, who are under 14 years old; (3) a misdemeanor conviction, like the one here, cannot be an aggravated felony under the INA; and (4) his statute of conviction failed to require at least a "knowing" *mens rea*, either by requiring a defendant to know the victim's age or by requiring that he act with the purpose of his own sexual gratification. Garcia also challenged the IJ's conclusion that his conviction qualified as a particularly serious crime. And he contested the IJ's finding on torture.

While his administrative appeal was pending, Garcia moved before the BIA to remand his case for the IJ to consider his mental

10

health and purportedly new diabetes diagnosis in analyzing whether his conviction was a particularly serious crime.

On August 25, 2022, the BIA dismissed Garcia's appeal and denied his motion to remand. The BIA began by affirming the IJ's determination that Garcia's conviction under NYPL § 130.60(2) was an aggravated felony. *In re Joaquin Garcia Pinach*, No. A037 159 990 (B.I.A. Aug. 25, 2022), *aff'g* No. A037 159 990 (Immigr. Ct. N.Y.C. Apr. 4, 2022). The BIA acknowledged that it had adopted the definition of "sexual abuse" contained in 18 U.S.C. § 3509(a) as a non-exclusive guide that "includes, but is not limited to," various enumerated acts that constitute sexual abuse of a minor for purposes of 8 U.S.C. § 1101(a)(43)(A). App'x at 3 (citing *Matter of Rodriguez-Rodriguez*, 22 I. & N. Dec. 991, 996 (B.I.A. 1999); *Mugalli v. Ashcroft*, 258 F.3d 52, 57–60 (2d Cir. 2001)).

The BIA then explained that Garcia's overbreadth argument was foreclosed by our holding in *Rodriguez*, that first-degree sexual abuse under NYPL § 130.65(3) constituted "sexual abuse of a minor," and hence an aggravated felony. The BIA observed that New York law punishes the same conduct—"sexual contact"—in its first- and second-degree sexual abuse offenses and that because we held in *Rodriguez* that the range of conduct encompassed by "sexual contact" (potentially including a kiss on the mouth) was "sexual abuse of a minor" for the purposes of § 130.65(3), the same conclusion must also apply to § 130.60(2). The BIA found the differences between the first- and second-degree offenses to be immaterial with respect to the aggravated felony inquiry. Although noting our discussion in

11

*Rodriguez* that first-degree abuse had to involve a victim under eleven years old, the BIA viewed this as secondary to our focus on the scope of the proscribed sexual conduct; accordingly, it made no difference that victims of second-degree abuse could be somewhat older (under fourteen). Likewise, the BIA placed no significance on the lighter maximum sentence associated with second-degree abuse, relying on BIA precedent holding that misdemeanor offenses fall within the scope of "sexual abuse of a minor." App'x at 3–4 (citing *Matter of Small*, 23 I. & N. Dec. 448, 449 (B.I.A. 2002)).

Garcia's *mens rea* challenge fared no better. The BIA found this contention foreclosed by our Court's holding in *Acevedo v. Barr*, 943 F.3d 619 (2d Cir. 2019), that under New York law, a criminal statute—like the one at issue here—should be construed as defining a crime of mental culpability unless the statute clearly indicates a legislative intent to impose strict liability. *Id.* at 625 (citing NYPL § 15.15(2)).

The BIA then agreed with the IJ's assessment that Garcia's conviction was a particularly serious crime, despite being classified in New York as a misdemeanor, because the Petitioner's victim was a seven-year-old child and the offense conduct involves a "level of harm inherent to sexual contact with a child." App'x at 4.

Next, the BIA upheld the IJ's denial of Garcia's application for deferral of removal under the CAT. [4]

---

[4] In his petition for review, Garcia has not challenged the denial of his request for deferral of removal under the CAT. Accordingly, we deem any such

12

Finally, the BIA denied the motion to remand. The BIA acknowledged that, under its precedents, an IJ may consider a respondent's mental health when assessing whether a prior conviction was for a particularly serious crime. *See id.* at 6 (citing *Matter of B-Z-R-*, 26 I. & N. Dec. 339 (B.I.A. 2014)). But Garcia had not alleged that he was suffering from mental illness when he committed his sexual abuse offense. Nor had Garcia shown how his diabetes diagnosis would have changed the result in this case. The BIA therefore determined that Garcia's proffered evidence would not have demonstrated that he was more likely than not to be tortured if returned to the Dominican Republic, and hence entitled to deferral of removal under the CAT.

Garcia timely petitioned our Court for review of the BIA's decision. A year later, while his petition was pending, Garcia submitted to the BIA a motion to reopen his removal proceedings. He acknowledged that the motion was untimely because it was filed long after the 90-day deadline for motions to reopen. *See* 8 U.S.C. § 1229a(c)(7)(C)(i) ("Except as provided in this subparagraph, the motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal."); 8 C.F.R. § 1003.2(c)(2). But Garcia argued that the BIA should either equitably toll the deadline or exercise its authority to reopen *sua sponte*. Garcia sought to present purportedly new evidence of his mental health and diabetes diagnoses, arguing among other things that this evidence

challenge to be abandoned. *See Debique*, 58 F.4th at 684 ("We consider abandoned any claims not adequately presented in an appellant's brief, and an appellant's failure to make legal or factual arguments constitutes abandonment.").

(1) undermined the determination that he had committed a particularly serious crime (which rendered him ineligible for certain forms of relief), and (2) showed his eligibility for CAT relief.

On November 30, 2023, the BIA denied Garcia's motion to reopen, finding that he had not shown an extraordinary circumstance or due diligence necessary for equitable tolling. The BIA noted that Garcia did not adequately explain why he failed to make arguments or present evidence previously about his mental health at the time of his 2017 offense; that he did not show how the new evidence about his diabetes significantly differed from what he had presented in his prior motion to remand; and that he failed to demonstrate a "truly exceptional situation" that warranted *sua sponte* reopening. *In re Joaquin Garcia Pinach*, No. A037 159 990 (B.I.A. Nov. 30, 2023).

Garcia timely petitioned for review of the BIA's denial of his motion to reopen. This Court then consolidated his two pending petitions, which we now consider.

## II.     Discussion

We start by defining the contours of the issues presented in these petitions, and the appropriate standards of review for each.

First, we consider Garcia's petition for review of his removal order. When, as here, "the BIA adopts and affirms the IJ's decision, we review the two decisions in tandem." *Ojo v. Garland*, 25 F.4th 152, 159 (2d Cir. 2022). We disregard, however, any findings by the IJ that

14

the BIA did not reach or rely on. *See Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005).

Our review of the removal order is limited to the sole issue that Garcia raises in his petition for review—namely, whether his conviction is an aggravated felony. The INA limits the jurisdiction of federal courts to review agency immigration decisions such that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section . . . 1227(a)(2)(A)(iii)" for an aggravated felony. 8 U.S.C. § 1252(a)(2)(C). An "aggravated felony" under the INA includes "murder, rape, or sexual abuse of a minor." *Id.* § 1101(a)(43)(A). In short, the INA's jurisdictional bar applies in cases like the present one, where "(1) the petitioner is an alien; and (2) he is deportable under one of the offenses enumerated in 8 U.S.C. § 1101(a)(43)." *Mugalli*, 258 F.3d at 54–55. There is an exception to this jurisdictional bar: We may review constitutional claims and questions of law. 8 U.S.C. § 1252(a)(2)(D). We therefore have jurisdiction to determine the purely legal question of whether Garcia's conviction under NYPL § 130.60(2) constitutes "sexual abuse of a minor," making this offense an "aggravated felony." *Bell v. Reno*, 218 F.3d 86, 89 (2d Cir. 2000). If we find that Garcia "is in fact removable because he was convicted of an aggravated felony . . ., we must dismiss his petition for lack of jurisdiction." *Ming Lam Sui v. INS*, 250 F.3d 105, 110 (2d Cir. 2001).

15

That limited issue—whether a conviction under NYPL § 130.60(2) is categorically an aggravated felony—does not entail consideration of the underlying facts of Garcia's case. We review the BIA's determination of that strictly legal question *de novo*. *See Chery v. Garland*, 16 F.4th 980, 983 (2d Cir. 2021).

Second, we consider Garcia's petition for review of the BIA's denial of his motion to reopen. Once again, our review is limited to the sole basis on which Garcia challenges this decision—namely, that the BIA erred in declining to equitably toll the 90-day deadline for filing that motion.

Our Court has explained that the jurisdictional bar, and its exceptions for constitutional and legal questions, applies not only to our review of a removal order that is based on an aggravated felony, but also to related motions to reopen proceedings following such an order. *See Durant v. INS*, 393 F.3d 113, 115–16 (2d Cir. 2004) (Sotomayor, *J.*).[5] In *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 226, 228,

[5] Garcia argues that *Durant* was wrongly decided, on the ground that our Court "assumed without analysis that § 1252(a)(2)(C) limits its authority to review" a motion to reopen that challenges only a denial of withholding of removal. Pet'r Supp. Reply Br. at 9. But this panel remains bound by *Durant* unless and until it has been overruled by the Supreme Court or this Court sitting *en banc*. *See Dale v. Barr*, 967 F.3d 133, 142–43 (2d Cir. 2020). Garcia argues that we are free to reconsider *Durant* because intervening Supreme Court precedent has undermined that decision. He points to *Nasrallah v. Barr*, 590 U.S. 573, 576 (2020), where the Court held that courts may review agency factfinding in CAT determinations because denial of CAT relief does not affect the validity of a "final order of removal," which triggers the jurisdictional bar of § 1252(a)(2)(C). Garcia argues that the logic of *Nasrallah* applies with equal force to withholding of

(2020), the Supreme Court held that whether the BIA "incorrectly applied the equitable tolling due diligence standard to the 'undisputed' (or established) facts" is "a 'question of law'" for purposes of 8 U.S.C. § 1252(a)(2)(D). Accordingly, we have jurisdiction to consider Garcia's claim that the BIA misapplied the due diligence standard to the undisputed facts when it concluded that he did not warrant equitable tolling.

The next question is what standard of review we must apply to this claim. The Supreme Court did not give us a complete answer in *Guerrero-Lasprilla*, but it provided some guidelines for courts to consider: "The answer to the 'proper standard' question may turn on practical considerations, such as whether the question primarily requires courts to expound on the law, particularly by amplifying or elaborating on a broad legal standard (often calling for review *de novo*), or rather immerses courts in case-specific factual issues (often

removal claims, but (as he quite properly acknowledges) the Supreme Court reserved decision on that question. *Id.* at 587. When the Supreme Court expressly disclaims any view on an issue covered by one of our precedents, it cannot be said that its opinion has "broken the link on which we premised our prior decision, or undermined an assumption of that decision," such that we are now free from the precedential force of our prior panel decision. *See Dale*, 967 F.3d at 142–43. He also points to the Supreme Court's decision in *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021), for the proposition that "'a grant of withholding-only relief' does not impact the validity of an order of removal." Pet'r Supp. Reply Br. at 5 (quoting *Guzman Chavez*, 594 U.S. at 537). But again: As Garcia candidly recognizes, the Supreme Court in *Guzman Chavez* was not addressing the jurisdictional bar of § 1252(a)(2)(C). We cannot disregard our binding precedents simply by intuiting a new principle that *might* be consistent with later Supreme Court cases, but not necessarily dictated by them, particularly where the Supreme Court has explicitly told us that it is *not* speaking to the issue at hand.

17

calling for deferential review)." 589 U.S. at 228. The Supreme Court returned to this question in *Wilkinson v. Garland*, 601 U.S. 209, 217 (2024), holding that whether an alien has demonstrated "exceptional and extremely unusual hardship" for purposes of cancellation of removal under 8 U.S.C. § 1229b(b)(1)(D) is similarly a "question[] of law" that is excepted from the jurisdiction-stripping provisions under 8 U.S.C. § 1252(a)(2)(D). The Court described the operative inquiry—whether "established facts satisfy the statutory eligibility standard"—as a "mixed question" of law and fact. *Wilkinson*, 601 U.S. at 225. Noting that such a "mixed question is primarily factual," the Court held that our review of the BIA's decision in this regard must be "deferential." *Id.*

It is worth noting how easy it might be to miss the difference between two similarly worded (but definitionally distinct) concepts: (1) what our case law familiarly refers to as "legal questions," "conclusions of law," and the like, when sorting out *standards of review*, and (2) the technical statutory term "questions of law" as used in 8 U.S.C. § 1252(a)(2)(D), which delineates which issues may be *reviewed at all* in a narrow band of immigration cases. With respect to the first category, we commonly explain that abstract legal questions are subject to *de novo* review—as contrasted with, say, factual findings which are reviewed much more deferentially. *See, e.g., Xia v. Bondi*, 137 F.4th 85, 89 (2d Cir. 2025). But as we have just explained, in light of *Guerrero-Lasprilla* and *Wilkinson*, the term "questions of law" as it appears in § 1252(a)(2)(D) is a term of art with a specialized meaning that sweeps in a category of issues that are much broader than what

18

are commonly considered pure questions of law for standard-of-review purposes. *See Guerrero-Lasprilla,* 589 U.S. at 228; *Wilkinson*, 601 U.S. at 225. Accordingly, and in line with the Supreme Court's admonitions, we must guard against reflexively applying *de novo* review to all "questions of law" under 8 U.S.C. § 1252(a)(2)(D), just because that term sounds awfully similar (or even identical) to the term regularly used in our case law for strictly legal issues. So, what standard should apply in this case?

Garcia does not dispute that the BIA applied the correct legal standard for considering whether to equitably toll the deadline for filing a motion to reopen. Accordingly, *de novo* review would be inappropriate here. [6]

---

[6] In reaching this conclusion, we reject Garcia's argument that we have generally applied *de novo* review to the BIA's denial of equitable tolling. Pet'r Supp. Br. at 28. In support of that proposition, he cites *Iavorski v. INS*, 232 F.3d 124, 128, 134 (2d Cir. 2000), where we first held that the time to file a motion to reopen is not jurisdictional, but rather is subject to equitable tolling. Garcia's reliance on *Iavorski* is misplaced. In that case, the BIA had denied the petitioner's motion to reopen as untimely and held that equitable tolling was categorically unavailable. It was the BIA's pure "conclusion[] of law" (that there can never be equitable tolling in immigration cases) that we reviewed *de novo*. 232 F.3d at 128. By contrast, we proceeded to explain that where the BIA applies the correct legal standard, its decision to deny a motion to reopen is reviewed deferentially—that is, "to determine whether the decision was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." *Id.* Garcia correctly points out that, after determining that equitable tolling was theoretically available in Iavorski's case, we proceeded to determine whether Iavorski had demonstrated reasonable diligence (and we concluded that he had not), even though the BIA had not considered that question. But that was not *de novo* review of something the BIA had already decided. Instead, it was a determination of whether remand

19

This case involves an application of law to fact—and so, our review here must be "deferential." *Wilkinson*, 601 U.S. at 225. But "deferential" can mean different things in different contexts, as our Court recently explained in *Toalombo Yanez v. Bondi*, 140 F.4th 35 (2d Cir. 2025). In that case, we considered the question of first impression, left open by the Supreme Court in *Wilkinson*, of precisely how much deference must be accorded to the BIA's determination of whether an immigration petitioner had demonstrated that her removal would lead to "exceptional and extremely unusual hardship" to her children. *Id.* at 37. We considered various options: the "substantial evidence" standard that usually applies to factfinding in immigration cases, under which "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B); the "abuse of discretion" standard; and the "clear error" standard. *See Toalombo Yanez*, 140 F.4th at 40–44. We ultimately concluded that "clear error" was the most appropriate lens through which we should review application of the "exceptional and extremely unusual hardship" standard, because that was a "primarily factual" exercise that required an adjudicator to engage in a "cumulative analysis" of numerous factors in "what can generally be understood as a totality-of-the-circumstances analysis." *Id.* at 43.

would be futile because the BIA would have inevitably reached the same conclusion. *Id.* at 134. Perhaps we would do well to use different Latin terms to differentiate between when we are the first adjudicator to consider an issue (*ex novo?*), as opposed to when we wipe the slate clean of what an agency has already decided, and give the question a completely fresh look (*de novo*). But the labels are unimportant. In *Iavorksi* we did not do what we are doing today: looking at the BIA's tolling analysis and asking whether the agency got it right. That, we reaffirm, is an exercise that calls for deference.

Unlike the situation in *Toalombo Yanez*, we are not required to write on a blank slate about the precise level of deference that must be accorded to the BIA when we review its denial of a motion to reopen immigration proceedings, including under the doctrine of equitable tolling. We have long reviewed such decisions under the familiar "abuse of discretion" standard, which is "highly deferential." *Rashid v. Mukasey*, 533 F.3d 127, 130 (2d Cir. 2008). We apply such deference "mindful that motions to reopen 'are disfavored for the same reasons as are petitions for rehearing and motions for a new trial on the basis of newly discovered evidence.'" *Ali v. Gonzales*, 448 F.3d 515, 517 (2d Cir. 2006) (quoting *INS v. Doherty*, 502 U.S. 314, 322–23 (1992)). And we have explained that the BIA does not abuse its discretion in denying equitable tolling if it has a "reasonable basis" for concluding that the respondent "failed to act with diligence" in pursuing his claim "during the *entire* period he seeks to toll." *Rashid*, 533 F.3d at 132–33.

Having clarified what we may review, and how we must review it, we now turn to the merits.

### A. Aggravated Felony

To determine whether a state conviction constitutes an aggravated felony under the INA, we generally apply a categorical approach. We look to "whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding aggravated felony." *Flores v. Holder*, 779 F.3d 159, 165 (2d Cir. 2015). Because this inquiry focuses on the definition of a

generic federal "crime," rather than on "the facts underlying the case, we must presume that the conviction 'rested upon nothing more than the least of the acts' criminalized, and then determine whether even those acts are encompassed by the generic federal offense." *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013) (quoting *Johnson v. United States*, 559 U.S. 133, 137 (2010)).

The elements of Garcia's state conviction are straightforward enough. Under New York law, a person is guilty of second-degree sexual abuse "[1] when he or she subjects another person to sexual contact and [2] when such other person is . . . [l]ess than fourteen years old." NYPL § 130.60(2). Section 130.00(3) of New York Penal Law defines "sexual contact" as "any touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party."

The next issue is whether Garcia's sexual abuse conviction categorically fits within the term "sexual abuse of a minor," which is included in the INA's definition of an aggravated felony. 8 U.S.C. § 1101(a)(43)(A). In our Circuit, this is not an open question. In *Debique v. Garland*, we expressly held that "a conviction under N.Y. Penal Law § 130.60(2) is 'sexual abuse of a minor.'" 58 F.4th at 678. In doing so, we relied on our earlier holding in *Rodriguez v. Barr*, 975 F.3d at 194, "that a substantively identical provision" of New York law—first-degree sexual abuse under NYPL § 130.65(3)—also constituted "sexual abuse of a minor." *Debique*, 58 F.4th at 682. We pointed to the central similarity between the two statutes: Both prohibited "sexual contact" with minors, and both used the same

22

definition of "sexual contact." *Id.* And we had already held in *Rodriguez* that "this definition of 'sexual contact' is a categorical match to the generic federal offense." *Id.* (citing *Rodriguez*, 975 F.3d at 195).

In *Debique*, we dismissed as immaterial the sole distinction between the two statutes, which was the element relating to the victim's age: First-degree abuse requires the victim to be under eleven years old, whereas second-degree abuse requires the victim to be under fourteen years old. 58 F.4th at 682. In our view, "various authorities" supported the conclusion that "sexual abuse of a minor" sweeps in crimes committed against victims who were under fourteen years old, including: (1) the Supreme Court's holding in *Esquivel-Quintana v. Sessions*, 581 U.S. 385, 390–91 (2017), that in the statutory rape context, "sexual abuse of a minor" requires that the victim be younger than 16; (2) BIA precedent that "sexual abuse of a minor" covers victims under 18 years old, *In re V-F-D*, 23 I. & N. Dec. 859, 862 (B.I.A. 2006); (3) evidence that at the time the INA was amended in 1996 to expand the definition of an aggravated felony, "the term 'minor' was likely understood to refer to individuals under the age of eighteen"; and (4) a BIA decision from 2002 that a conviction under NYPL § 130.60 is "sexual abuse of a minor," *In re Small*, 23 I. & N. Dec. 448, 449 (B.I.A. 2002). *See Debique*, 58 F.4th at 682–83.

*Debique* squarely applies here, and our panel is therefore obliged to adhere to its holding. Our Court is "bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of [this] Court or by the Supreme Court." *Matthews*, 927 F.3d at 614. "Accordingly, it is neither appropriate nor possible" for

a panel of this Court to disregard an opinion of a previous panel. *United States v. Peguero*, 34 F.4th 143, 158 (2d Cir. 2022).

Garcia acknowledges our holding in *Debique*, but he contends that we are free to revisit it for two reasons.

First, he argues that we can and should consider an argument that (he contends) was not presented to our Court in *Debique*, and which we left open: that Congress cannot have meant "sexual abuse of a minor" to include "consensual kissing between teenagers close in age." Pet'r Reply Br. in 22-6421, at 1. This argument really has two components: (1) that the New York law covers a mere kiss on the lips, whereas federal law requires something more; and (2) that the New York law requires no age differential between perpetrator and victim, whereas federal law does. We consider each point in turn.

Starting with the kiss: Garcia relies primarily on our statement in *James v. Mukasey*, 522 F.3d 250, 258 (2d Cir. 2008), that "under New York law, a kiss on the mouth constitutes 'sexual contact'" under NYPL § 130, and "[t]his definition is broader than that of the federal statute from which the BIA has drawn guidance"—that is, 18 U.S.C § 3509. But *Debique* relied expressly on *Rodriguez*, and in *Rodriguez* we rejected this observation as *obiter dictum*. 975 F.3d at 193 ("[T]he *James* court's hypothetical account was not necessary to its decision and therefore does not bind this panel."). And *dictum* it was. At issue in *James* was whether a completely different New York statute, NYPL § 260.10, for endangering the welfare of a child, constituted sexual abuse of a minor. 522 F.3d at 252. Accordingly, in *Rodriguez* we relied on New York case law to determine that the state's definition of "intimate" body parts "'involves considerations other than mere

24

anatomical location, such as what area of the body is touched, what is the manner of the touching, and under what circumstances did the touching take place.'"  975 F.3d at 193 (quoting *People v. Morbelli*, 544 N.Y.S.2d 442, 446 (N.Y. Crim. Ct. 1989)). We held that "for both the state statute and the federal definition as interpreted by the BIA, the proscribed conduct is defined by not only the physical act but also by the *mens rea* of the wrongdoer," which requires that it be "accomplished for the sexual gratification of the perpetrator."  *Id.* at 194.  We also noted, because we were addressing first-degree sexual abuse under NYPL § 130.65(3), that the child victim had to be under eleven years old.  *Id.*

Our observation in *Rodriguez* applies just as aptly here:  Second-degree sexual abuse under NYPL § 130.60(2) requires contact with the same range of "intimate" body parts that were at issue in *Rodriguez*; and requires the same *mens rea* that was at issue in *Rodriguez.*  The only difference is that the age of the minor victim may be slightly older—under age 14, instead of age 11.  That is the only difference between those provisions of second-degree and first-degree sexual abuse under New York law, and *Debique* nevertheless found second-degree abuse to constitute "sexual abuse of a minor."  58 F.4th at 682.  In short, our Court has decisively trod this ground (of which body parts are covered by NYPL § 130.60) in more than one precedential opinion, and this panel has no authority to backtrack.

Turning to the question of age differential: Garcia points out that in a footnote in *Debique*, we expressly declined to "decide whether the generic federal definition of 'sexual abuse of a minor' requires a minimum age differential or particular relationship

25

between the perpetrator and victim." 58 F.4th 683 n.6. He contends that because the Court reserved decision on that point in *Debique*, we are free to rely on that very argument to reject the holding of *Debique* itself: that § 130.60(2) is a categorical match for "sexual abuse of a minor." However, Garcia misses the entire point of our footnote. The only logical reason we could choose not to decide whether a minimum age differential might *otherwise* be required is because it was not necessary to our decision *with respect to § 130.60(2)*. That footnote immediately followed our conclusion, in the corresponding text, that a criminal offense involving a victim *under fourteen years old* "does not sweep more broadly than the generic federal definition of 'sexual abuse of a minor.'" *Id.*at 683. In other words, for victims that young, the New York statute did not need to require an age differential. Had we thought otherwise—that perhaps an age differential might always be required, no matter how young the victim—we would not have been able to hold as we did, that § 130.60(2) was a categorical match for "sexual abuse of a minor" as used in the INA. Put another way, we concluded in *Debique* that we were capable of discerning that § 130.60(2) was an aggravated felony without grappling with whether other statutes dealing with older victims might need to contain an age differential between victim and perpetrator. That conclusion binds us today.

Accordingly, we reject Garcia's first major contention: that *Debique* is not binding on the grounds that it purportedly left open certain arguments that he now raises.

Second, Garcia argues that we are obliged to revisit *Debique* because it was improperly premised on *Chevron* deference to the

26

BIA's interpretation of "sexual abuse of a minor"—deference that is no longer appropriate after the Supreme Court's decision in *Loper Bright*. Garcia is correct that there is a narrow exception to the rule that an opinion of one panel of this Court binds future panels. We may reconsider an earlier panel decision if "there has been an intervening Supreme Court decision that casts doubt on our controlling precedent." *Matthews*, 927 F.3d at 614. But we have warned that "this exception is not to be construed liberally." *United States v. Sterkaj*, 138 F.4th 95, 100 (2d Cir. 2025). The Supreme Court decision in question must have "broke[n] the link on which we premised our prior decision, or undermined an assumption of that decision." *Peguero*, 34 F.4th at 158. "[W]e resort to this exception cautiously, because a less-than-stringent application of the standards for overruling prior decisions not only calls into question a panel's respect for its predecessors but also increases uncertainty in the law by revisiting precedent without cause." *Dale*, 967 F.3d at 143.

Prudence is especially warranted here, where Garcia would have us rely on *Loper Bright* to disregard not one; not two; not three; but at least four binding precedents of this Court. Most immediately, he asks us to overturn *Debique*, which is directly on point for the proposition that second-degree sexual abuse under NYPL § 130.60(2) is an aggravated felony. But, to agree with Garcia, we would have to hold more broadly that "sexual contact" under New York law (the very same *actus reus* covered by first-degree sexual abuse of a minor under NYPL § 130.60) does not constitute "sexual abuse of a minor"—a conclusion that would fatally undermine our decision in *Rodriguez* as well. And if we were to go down the road of abandoning our prior statutory interpretations of 8 U.S.C. § 1101(a)(43)(A) that were

27

premised on deference to the BIA, it is hard to see how we would not also jettison our decision in *Mugalli v. Ashcroft*, 258 F.3d 52 (2d Cir. 2001). In that case, we held that third-degree rape under NYPL § 130.25(2)—a statutory rape offense which punishes oral sexual contact with a person younger than 17—was likewise sexual abuse of a minor, and therefore an aggravated felony. *See Mugalli*, 258 F.3d at 53. In reaching that conclusion, we construed § 1101(a)(43)(A) to permit the BIA to rely by (non-exclusive) analogy on the types of sexual misconduct listed in 18 U.S.C. § 3509, in order to ascertain what constitutes sexual abuse of a minor. *See id.* at 56–61. And as goes *Mugalli*, also goes *Acevedo v. Barr*, 943 F.3d 619, 623 (2d Cir. 2019), where we confirmed that the BIA's construction of "sexual abuse of a minor" remained entitled to *Chevron* deference and held that a conviction under NYPL § 130.45 (punishing attempted oral or anal sexual conduct with a person under 15) fits within § 1101(a)(43)(A). In short, we quite properly pause for reflection before triggering such an upheaval in nearly twenty-five years of our caselaw, which would seem to flow from accepting Garcia's arguments.

The same worries about disturbing years of settled precedents seem to have occurred to the Supreme Court in *Loper Bright*. In its opinion, the Court made clear that its decision did "not call into question prior cases that relied on the *Chevron* framework. The holdings of those cases that specific agency actions are lawful . . . are still subject to statutory *stare decisis* despite our change in interpretive methodology." *Loper Bright*, 603 U.S. at 412. "Mere reliance on *Chevron* cannot constitute a special justification for overruling such a holding, because to say a precedent relied on *Chevron* is, at best, just

28

an argument that the precedent was wrongly decided.  That is not enough to justify overruling a statutory precedent." *Id.*

Consistent with this view, some of our sister circuits have declined to overrule or revisit their prior decisions applying *Chevron* deference following *Loper Bright*.  *See, e.g.*, *Tennessee v. Becerra*, 131 F.4th 350, 366 (6th Cir. 2025) (stating, as to "previously settled issues decided based on *Chevron*," that "mere reliance on *Chevron* cannot constitute a special justification for overruling such a holding"); *Murillo-Chavez v. Bondi*, 128 F.4th 1076, 1087 (9th Cir. 2025) (holding that, after *Loper Bright*, the court is bound by prior precedents that applied *Chevron* deference to determine that certain offenses were crimes of moral turpitude, but that court is free not to apply those precedents when ascertaining whether "a previously untreated crime" so qualifies); *Lopez v. Garland*, 116 F.4th 1032, 1045 (9th Cir. 2024) (holding that even after *Loper Bright*, court was bound by circuit precedent based on *Chevron* deference, which interpreted 8 U.S.C. § 1227(a)(2)(A)(ii) to determine what constitutes a "single scheme of criminal misconduct" for purposes of immigration law).

Garcia suggests that *Loper Bright*'s discussion of *stare decisis* refers only to cases involving statutory interpretation by the Supreme Court, rather than by the courts of appeals.  But the Supreme Court in *Loper Bright* made no such distinction, and we are chary of drawing one ourselves.  As the Supreme Court has observed, the "[p]rinciples of *stare decisis* . . . demand respect for precedent whether judicial methods of interpretation change or stay the same.  Were that not so, those principles would fail to achieve the legal stability that they seek and upon which the rule of law depends."  *CBOCS West, Inc. v.*

*Humphries*, 553 U.S. 442, 457 (2008). Garcia suggests that statutory *stare decisis* should be weaker in the courts of appeals because Congress is less likely to monitor and react to our decisions than to those of the Supreme Court. Perhaps so; but perhaps not. Such empirical claims are hard to measure, and Congress can (and sometimes does) pass new laws in response to circuit-level decisions. *See, e.g.*, *Singh v. Bondi,* 139 F.4th 189, 199–200 (2d Cir. 2025) (outlining how the REAL ID Act, codified in part at 8 U.S.C. § 1158(b)(1)(B)(iii), prospectively superseded "judge-made standards" developed in this and other courts of appeals for evaluating the reliability of adverse credibility determinations in asylum proceedings, based on statements made by aliens in border or airport interviews). But even assuming that our decisions are less likely to prompt legislative responses, that might be due to Congress's awareness that there are other ways to fix our mistakes of statutory interpretation, short of passing a new law. If we go astray, our sister circuits are just as likely to take a divergent path, creating a split of authority, and the Supreme Court can grant *certiorari* to correct our errant ways. One might even argue that the Supreme Court's ability to set us straight argues in favor of a *stronger* version of *stare decisis* among the inferior courts.

But we need not resolve such niceties about whether statutory *stare decisis* is theoretically stronger or weaker among the courts of appeals, because either way—it applies here. For one thing, it is not clear that *stare decisis* principles (governing when a court should overrule its own precedents) are the same as the rules governing the binding nature of one panel's decision on a later panel. But more importantly, even if it were appropriate after *Loper Bright* for one panel to revisit the decision of another panel that was founded

30

exclusively upon *Chevron* deference, that is not a fair description of what we did in *Debique*. True, we began our analysis in *Debique* by explaining that we were bound by two of our precedents—*Mugalli* and *Acevedo*—in which we deferred to the BIA's conclusion that 18 U.S.C. § 3509(a)(8) serves as "a useful identification of the forms of sexual abuse" that are covered by the INA. *Debique*, 58 F.4th at 681 (quoting *Mugalli*, 258 F.3d at 57 (quoting, in turn, *In re Rodriguez-Rodriguez*, 22 I. & N. Dec. 991, 995 (B.I.A. 1999))). And we confirmed that we were similarly bound by our decision in *Rodriguez*, which was also premised in part on *Chevron* deference to the BIA's reliance on § 3509(a)(8) as a guidepost to the meaning of "sexual abuse of a minor." *See Debique*, 58 F.4th at 682.

But our analysis in *Debique* proceeded to consider additional arguments—in addition to agency deference—that counseled in favor of the conclusion that NYPL § 130.60(2) was an aggravated felony. We relied on "various authorities" to the effect that "the generic federal definition of 'sexual abuse of a minor' applies to crimes committed against 'a minor' who is under fourteen years old." 58 F.4th at 682. Among those "authorities" was the Supreme Court's decision in *Esquivel-Quintana*, 581 U.S. at 390–91, which eschewed any deference to the BIA in concluding that "the generic federal definition of sexual abuse of a minor" covered victims younger than 16, at least in the context of the statutory rape offenses at issue there. *Debique*, 58 F.4th at 682. Another of the "authorities" we consulted was the statutory amendment history of the INA: We concluded that, at the time Congress adopted the expanded definition of "aggravated felony" in 1996, "the term 'minor' was likely understood to refer to individuals under the age of eighteen." *Id.* at 683.

Likewise, we rejected some of Debique's counterarguments on bases that had nothing to do with BIA deference. *Id.* at 683–84. For example, Debique argued that second-degree sexual abuse cannot be an aggravated felony because New York labels it a misdemeanor. We held that argument was foreclosed by the Supreme Court's holding that, for purposes of the categorical approach, we must disregard the labels placed on crimes by state law. *Id.* at 683 (citing *Taylor v. United States*, 495 U.S. 575, 589 (1990)). Likewise, and as noted above, we relied on our own interpretation of New York case law when rejecting Debique's reliance on our dicta in *James* to the effect that an innocent kiss on the mouth can constitute "sexual contact" for purposes of NYPL § 130.60(2). *Id.* at 683–84. In short, our holding in *Debique* was grounded on a variety of interpretive methods, and the elimination of *Chevron* deference does not undermine the other bases for our conclusion in that case.

And indeed, quite independent of *stare decisis*, the prior-panel rule, and *Chevron* deference, we remain persuaded that a violation of NYPL § 130.60(2) constitutes "sexual abuse of a minor" for purposes of 8 U.S.C. § 1101(a)(43)(A). *See, e.g., Debique*, 58 F.4th at 686 (Park, *J.*, concurring in the judgment) (criticizing court's conclusion that "sexual abuse of a minor" was ambiguous and that *Chevron* deference was appropriate; agreeing that adherence to circuit precedent including *Acevedo* was nevertheless required; but suggesting that deference was "likely harmless to the outcome of this case" in any event). Stripped to its essentials, this is a straightforward case. As we have noted above, New York requires proof of "sexual contact" for a conviction of either first- or second-degree sexual abuse under NYPL § 130.65(3) or § 130.60(2). And New York defines "sexual contact" to

32

require both an *actus reus* ("any touching of the sexual or other intimate parts of a person") and a *mens rea* ("for the purpose of gratifying sexual desire of [any] party"). NYPL § 130.00(3). The expressly sexual nature of such acts (which are limited to contact with "sexual or other intimate parts"), coupled with the expressly sexual nature of such intent (to "gratify[] sexual desire") clearly puts the proscribed conduct within any commonsense meaning of the federal term "sexual abuse," as used in § 1101(a)(43)(A). As the Supreme Court has explained, "the 'ordinary meaning' of [a] 'defined term' is an important contextual clue" when applying the categorical approach. *Delligatti v. United States*, 145 S. Ct. 797, 808 (2025) (recognizing intentional murder as "*the* prototypical 'crime of violence'"). And second-degree sexual abuse under NYPL § 130.60(2) can be committed only against a victim who is younger than 14 years old—a child who, by any yardstick, is a "minor." *See, e.g., Esquivel-Quintana*, 581 U.S. at 393 (holding, in the statutory rape context, that "sexual abuse of a minor" requires that the victim be younger than 16). Consistent with our conclusion in *Debique*, for a statute like this, which requires that the victim be so young, we are aware of no basis for requiring a minimum age differential between the perpetrator and the victim to establish that a minor has been "sexually abused."

Nor does it matter that New York law labels second-degree sexual abuse a class A misdemeanor, NYPL § 130.60, which is punishable by just a hair less than a year in prison, NYPL § 70.15(1) (sentence not to exceed 364 days). As our Court has recognized, § 1101(a)(43) uses the words "aggravated felony" as a term of art that includes crimes that are decidedly *not* "felonies"—either in the sense

33

that they are so labeled by state or federal statute, or in the sense that they are punishable by more than a year in prison (which is how federal law distinguishes misdemeanors from felonies for federal sentencing purposes, 18 U.S.C. § 3559).  *See, e.g., United States v. Pacheco*, 225 F.3d 148, 153–55 (2d Cir. 2000) (holding that certain misdemeanors can constitute "aggravated felonies" under § 1101(a)(43)); *see also United States v. Ramirez*, 731 F.3d 351, 354–55 (5th Cir. 2013) ("[E]very circuit court to have considered whether a misdemeanor conviction can constitute an aggravated felony for purposes of § 1101(a)(43), including our court, has held" that it can) (collecting cases); *United States v. Alvarez-Gutierrez*, 394 F.3d 1241, 1245 (9th Cir. 2005) (holding that to qualify as "sexual abuse of a minor" for purposes of § 1101(a)(43)(A), an offense need not be punishable by any minimum term of imprisonment).

In short, taken together, Garcia's arguments for abandoning our Court's prior holding in *Debique* are unavailing.  We therefore conclude that Garcia's conviction for second-degree sexual abuse under NYPL § 130.60(2) is a categorical match for "sexual abuse of a minor," 8 U.S.C. § 1101(a)(43)(A), which is an "aggravated felony" under 8 U.S.C. § 1227(a)(2)(A)(iii).  Thus, we dismiss this portion of Garcia's consolidated petition for review of his removal order for lack of jurisdiction.  *See* 8 U.S.C. § 1252(a)(2)(C).

## B.  Motion to Reopen

Garcia separately petitions this Court to review the BIA's denial of his motion to reopen his removal proceedings, and specifically its decision not to grant equitable tolling.  He wanted the IJ to consider additional medical evidence, which he says should have factored into

34

the determination of whether his offense constituted a particularly serious crime that barred his eligibility for withholding of removal.[7]

A "motion to reopen shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material."  8 U.S.C. § 1229a(c)(7)(B).  Such a motion "shall be filed within 90 days of the date of entry of a final administrative order of removal," *id.* § 1229a(c)(7)(C)(i), and "shall not be granted unless it appears . . . that evidence sought to be offered is material and was not available and could not have been discovered or presented at [a] former hearing." 8 C.F.R. § 1003.2(c)(1).  The deadline for filing a motion to reopen may be equitably tolled if the party seeking tolling was prevented from timely filing "in some extraordinary way" and "pass[es] with reasonable diligence th[r]ough the period it seeks to have tolled."

---

[7] Asylum is unavailable for anyone who, "having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States," and an aggravated felony is *per se* particularly serious as to asylum.  8 U.S.C. §§ 1158(b)(2)(A)(ii), B(i).  For applications for withholding of removal, however, an aggravated felony is *per se* particularly serious only if the applicant was sentenced to an aggregate prison term of at least five years. *Id.* § 1231(b)(3)(B).  Garcia was not sentenced to such a term for his 2019 state conviction.  Accordingly, the agency was required to determine whether his particular crime was particularly serious based on (1) "the nature of the conviction," (2) "the circumstances and underlying facts of the conviction," (3) "the type of sentence imposed," and (4) "whether the type and circumstances of the crime indicate that the alien will be a danger to the community." *Nethagani v. Mukasey*, 532 F.3d 150, 155 (2d Cir. 2008).  When making this circumstance-specific determination, the Attorney General has held that the agency may consider an applicant's mental health at the time of the offense and whether such evidence affects the determination of future dangerousness. *See Matter of B-Z-R-*, 28 I &N. Dec. 563, 565-66 (A.G. 2022).

*Iavorski*, 232 F.3d at 129, 134. As noted above, we review the BIA's decision not to grant equitable tolling for abuse of discretion, asking whether there is a "reasonable basis" for its conclusion that the respondent "failed to act with diligence" in pursuit of his claim "during the *entire* period he seeks to toll." *Rashid*, 533 F.3d at 132-33.

Garcia argues that his motion merited equitable tolling because he had only recently become aware of the purported connection between his Type II diabetes and his offense conduct. Specifically, Garcia argues that the diabetes might have impacted his ability to understand what he was doing at the time he improperly touched the genitals of the seven-year-old victim in his sex-abuse case. Such a mental health impairment, he contends, could have been considered a mitigating circumstance that would have allowed the IJ to determine that his sexual-abuse conviction was not, in fact, a "particularly serious crime" that barred him from seeking withholding of removal. But Garcia was concededly aware of both (1) his diabetes diagnosis and (2) the fact that his diabetes might have mental health consequences. These were the precise bases of his motion to remand, which the BIA denied. In light of Garcia's awareness—before the conclusion of his removal proceedings—that diabetes could impact his mental health, we cannot say that the BIA abused its discretion in concluding that he had failed to "adequately explain[] why he did not previously make allegations or present medical evidence or a personal affidavit regarding his mental health at the time of his 2017 offense." Supp. Special App'x at 4.

36

Last of all, we reject Garcia's contention that the BIA did not adequately explain its decision. We require a "minimum level of analysis . . . if judicial review is to be meaningful." *Poradisova v. Gonzales*, 420 F.3d 70, 77 (2d Cir. 2005). Here, the BIA offered enough explanation for us to understand why it ruled as it did. Nothing more was required.

## III.    Conclusion

To summarize, we hold as follows:

1. We have limited jurisdiction under 8 U.S.C. § 1252(a)(2)(D) to determine whether Garcia's conviction under NYPL § 130.60(2) constitutes "sexual abuse of a minor," making this offense an "aggravated felony"; and we review this question *de novo.*

2. We have limited jurisdiction under 8 U.S.C. § 1252(a)(2)(D) to determine whether the BIA erred in declining to equitably toll the 90-day deadline for Garcia to file his motion to reopen; we review the BIA's decision for abuse of discretion.

3. Garcia's conviction for second-degree sexual abuse under NYPL § 130.60(2) categorically constitutes "sexual abuse of a minor" under 8 U.S.C. § 1101(a)(43)(A), and is therefore an "aggravated felony" under 8 U.S.C. § 1227(a)(2)(A)(iii). We therefore dismiss his petition for review of his removal order for lack of jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(C).

4. The BIA did not abuse its discretion in denying Garcia's untimely motion to reopen his removal proceedings,

because it had a reasonable basis to conclude that he did not merit equitable tolling of the deadline to file such a motion. We therefore deny his petition for review of the BIA's denial of his motion to reopen.

For the foregoing reasons, we DISMISS the petition in No. 22-6421 and DENY the petition in No. 24-26.